BOSTON AND ALBANY RAILROAD COMPANY *vs.* NEW YORK CENTRAL RAILROAD COMPANY & another.

CLIFFORD M. BREWER, trustee, & others *vs.* NEW YORK CENTRAL RAILROAD COMPANY & others.

BOSTON AND ALBANY RAILROAD COMPANY & another *vs.* DEPARTMENT OF PUBLIC UTILITIES.

Suffolk. May 24, 1926. — June 30, 1926.

Present: BRALEY, CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Department of Public Utilities,* Petition for approval of bond issue. *Equity Jurisdiction,* To annul, review, modify or amend decision by department of public utilities. *Equity Pleading and Practice,* Parties, Reservation. *Boston and Albany Railroad Company. New York Central Railroad Company.*

In the provisions in the lease of the Boston and Albany Railroad Company to New York Central and Hudson River Railroad Company (afterwards

the New York Central Railroad Company) approved by St. 1900, c. 468, that if the board of railroad commissioners (now the department of public utilities) approved an issue of bonds for permanent additions and improvements, "the lessor shall, at the request of said lessee and to the extent that it lawfully may, issue its bonds . . . to meet the cost and expense thereof, and shall take such lawful corporate action to that end as may be requested by said lessee," and that the lessee might use the lessor's name in presenting petitions to the board "to secure the determinations aforesaid, from time to time," the words, "to the extent that it lawfully may," did not confine the jurisdiction of the department of public utilities or the power of the lessee to the lawful limitations upon a bond issue by the lessor as they existed when the lease was made: the parties intended by the expression used to refer to the law relating to a bond issue in force at the time when the question of approval or authorization of an issue might arise.

Such construction of the lease above described violated no constitutional right of the Boston and Albany Railroad Company or of any of its stockholders.

Upon the record before this court on a reservation of a bill in equity to revise, modify, amend or annul a decree by the department of public utilities upon a petition for approval of an issue of bonds under the provisions of the lease above described, it appeared that the department, referring to a schedule of items annexed to the petition purporting to show permanent additions and improvements upon the demised premises amounting to $3,018,282, stated: "An examination of the accounts and an inspection of the property of the railroad were made by the engineering and accounting divisions of the department . . . . Of the expenditures set forth in the schedule attached to the petition we are satisfied that to the amount of $2,990,000 they represent additions and improvements of a permanent character made upon the premises of the Boston and Albany railroad included in the lease, and are properly capitalizable." The Boston and Albany Railroad Company and certain of its stockholders contended that many items in the schedule annexed to the petition did not represent permanent additions and improvements and were not proper subjects for capitalization. *Held,* that, while it was apparent that the department rejected certain items in the schedule, upon the record it was not possible for this court to say what the items rejected were, or that any items which as a matter of law could not be found to represent permanent additions and improvements were included as such in the findings.

The word "permanent" as used in the lease above described is not the equivalent of "perpetual."

The department of public utilities, in deciding, upon the petition above described, whether certain additions and improvements were permanent, had a right to take into consideration the time they would last and, to some extent, the purposes of the lessee in making them; such determination called for the exercise of sound judgment.

Upon the petition above described, the department of public utilities had a right to consider depreciation in the value of the property of the Boston and Albany Railroad Company in determining the amount of bond issue which should be approved.

Provisions of the lease above described, besides those above quoted, were that the lessor "shall, at its own expense, maintain and keep the railroad and property hereby demised in good order and condition during the term of this lease" and "at the expiration or earlier termination of this lease, will return the demised road and property with all improvements and additions thereon to the lessor as a railroad between Boston and the Hudson River, with its branches, in all respects in as good condition as to its road, roadbed, bridges, lands, wharves, yards, terminal facilities, depots, stations, shops, and other structures, and as to its rolling stock, machinery, materials, tools, appliances and equipment, and other property and rights, real and personal, as the same now are or may be put in during the continuance of this lease and so that there shall be no depreciation in the same or any part thereof." The department in its decision stated: "The lease contemplates, in our judgment, the maintenance of the railroad in good order and condition during the term of the lease and its return, at the termination of the lease, in as good condition as it was at the beginning of the term or may have been thereafter put in, with all improvements and additions thereon, without impairment. Consequently, we do not think that we are justified in the approval of the issue of bonds unless it appears that depreciation accruing since the date of the lease has been adequately provided for," and in its determination considered accrued depreciation in the value of the property of the lessor. *Held*, that

(1) The department had a right to take into consideration the terms of the lease above described in deciding whether or not the bond issue was consistent with public interest;

(2) The department's interpretation of the lease was not inconsistent with its provisions;

(3) A contention by the lessee, that the question of depreciation could not be considered by the department until the end of the term, was not well founded;

(4) The proceedings of the department disclosed no basis for a contention that its method of computing depreciation was unlawful.

Upon a bill in equity under G. L. c. 25, § 5, to revise, modify, amend, or annul a decision or order by the department of public utilities upon a petition by New York Central Railroad Company for the Boston and Albany Railroad Company, proceeding under the provisions of the lease approved by St. 1900, c. 468, for the approval of an issue of bonds for permanent improvements and additions, *it was assumed* that the New York Central Railroad Company was entitled in due form to save its rights upon the question of law, whether on the whole evidence before the department certain findings of fact by the department were warranted, and to present to this court the question whether, upon the facts warrantably found, the order of the department was unlawful.

So far as was disclosed by the record before this court upon a report and reservation of the bill in equity above described, the New York Central Railroad Company, at the hearing before the department, made no objection to testimony or its relevancy or to the right of the department to make its own independent investigation; and it was *held*, that the stenographic notes and other evidence taken by the department were not admissible in evidence at the hearing of the bill in equity.

At the hearing before the department above described, the New York Central Railroad Company did not request the department to adopt one standard of determining depreciation rather than another. The reasons assigned by the department for its decision did not indicate what standard was adopted. Upon the reservation of the suit above described, it was *held*, that the New York Central Railroad Company could not question the standard adopted by the department in determining the depreciation.

THREE BILLS IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk respectively on July 25, July 26, and October 1, 1924, the first being brought by the Boston and Albany Railroad Company (hereinafter called the Albany) against the New York Central Railroad Company (hereinafter called the Central) and the department of public utilities (hereinafter called the department); the second by shareholders of the Albany against the same defendants and the Albany; and the third by the Albany and the Central against the department, all three bills in substance seeking that the court revise, modify, amend, or annul orders and rulings made by the department and entered on July 21, 1924, and described in the opinion, and enter such other or further order as the court shall deem proper in accordance with G. L. c. 25, § 5; c. 160, § 252.

The suits came on to be heard by *Carroll*, J.

The sixth clause of the lease described in the opinion provided that the lessee "shall, at its own expense, maintain and keep the railroad and property hereby demised in good order and condition during the term of this lease." The seventh clause provided that "at the expiration or earlier termination of this lease, will return the demised road and property with all improvements and additions thereon to the lessor as a railroad between Boston and the Hudson River, with its branches, in all respects in as good condition as to its road, roadbed, bridges, lands, wharves, yards, terminal facilities, depots, stations, shops, and other structures, and as to its rolling stock, machinery, materials, tools, appliances and equipment, and other property and rights, real and personal, as the same now are or may be put in during the continuance of this lease and so that there shall be no depreciation in the same or any part thereof. . . . "

The department in its decision, after quoting the above provisions, stated: "The lease contemplates, in our judgment, the maintenance of the railroad in good order and condition during the term of the lease and its return, at the termination of the lease, in as good condition as it was at the beginning of the term or may have been thereafter put in, with all improvements and additions thereon, without impairment. Consequently, we do not think that we are justified in the approval of the issue of bonds unless it appears that depreciation accruing since the date of the lease has been adequately provided for."

Other material facts are stated in the opinion.

The tenth request by the Albany before the department was as follows: "Permanent improvements under the lease are not to be confounded with expenditures chargeable under the accounting rules of the Interstate Commerce Commission to 'investment' as distinguished from 'operating expense.' The word 'permanent' does not appear in the Interstate Commerce Commission accounting rules; the object of the rules is to segregate and compel a separate return of the expenditures involved in the current operation of the property. All other expenditures are chargeable under the accounting rules to 'investment,' but may be paid for out of income or surplus; and in a proper case out of the proceeds of new stock or bonds."

The single justice reserved and reported the suits to the full court for determination "on the pleadings and evidence." The reservation contained the following: "The New York Central Railroad Company offered as evidence in each case the stenographic notes of the oral testimony and arguments at the hearings and conference before the department of public utilities, four reports made to said department by its engineer and/or accountant, a summary of the report of the engineer of the bureau of valuation of the interstate commerce commission, and certain votes, letters and schedules, being the documents more fully described in the stipulation appended hereto. . . . The intervening stockholders, Boston and Albany Railroad Company and the department of public utilities objected to this evidence. At the request

of the parties I also reserve for the full court the question of the admissibility of this evidence. This evidence is not to be printed as part of the record, but is to be produced at the argument and to be considered by the full court if in its opinion it should have been admitted. Any party, however, at its own expense may have all or any part of this evidence printed in its brief for the use of the full court.

"I make this reservation and report in the form adopted in view of the last sentence of the second paragraph of § 5 of G. L. c. 25 and because I think that this course is more likely to bring about a speedy decision of the case.

"Upon this reservation and report such decree is to be entered as justice and equity may require."

The case was submitted on briefs.

*N. Matthews & C. H. Baesler,* for Boston and Albany Railroad Company and Clifford M. Brewer and others.

*R. A. Stewart, F. H. Nash, & C. O. Pengra,* for New York Central Railroad Company.

*J. R. Benton,* Attorney General, *& C. F. Lovejoy,* Assistant Attorney General, for the Department of Public Utilities.

SANDERSON, J. The New York Central and Hudson River Railroad Company (hereinafter called the Central) became the lessee of the Boston and Albany Railroad Company (hereinafter called the Albany) by an indenture dated November 15, 1899, for the term of ninety-nine years from July 1, 1900, which was consented to by the Commonwealth · July 17, 1900, by St. 1900, c. 468. On June 13, 1923, the Central filed a petition to the department of public utilities (hereinafter called the department) for approval of an issue by the Albany of bonds to the amount of $3,000,000 alleging that it had made permanent additions to and improvements upon the demised premises, and asking approval of the proposed issue as reasonable and proper and also as consistent with the public interest, taking into consideration the fixed charges of the Albany, the amount and character of its contingent liabilities and other pertinent conditions. The petition was accompanied by a schedule purporting to show such additions to and improvements upon the demised premises amounting to $3,018,282.18. The department,

after hearing, found that the amount of additions and improvements of a permanent character was $2,990,000; and that that amount was properly capitalizable, but it further found that there had been a gross accrued depreciation of the depreciable property since the execution of the lease to November 30, 1922, of $2,450,000, and that the net accrued depreciation of the property accruing during the same period was $1,490,000, and approved an issue of bonds of the face value of $1,500,000.

The Albany and certain of its stockholders made requests for rulings before the department, which hereafter will be referred to. No requests were made by the Central. After the decision, the Albany and certain of its stockholders filed petitions in the Supreme Judicial Court asking that the order of the department be annulled, reviewed, modified, or amended, for the reasons that under the lease the plaintiff is under no obligation to issue any more bonds and that the department erred in approving an issue to the amount of $1,500,000; and for the further reason that the department adopted an erroneous rule in deciding what expenditures were for permanent additions and improvements. The grounds stated in these petitions were based upon the requests for rulings made before the department. The Central filed a petition for reviewing, modifying, amending or annulling the orders and rulings of the department for the reason that the department did not approve an issue of bonds to the amount of $2,990,000.

The case came on for hearing before a single justice of the Supreme Judicial Court, who made certain findings of fact and reserved and reported the case, and who also reserved the question whether the stenographic notes of oral testimony and arguments at the hearings and conferences before the department and certain reports, votes, letters and schedules, then offered in evidence by the Central, were admissible.

A fundamental question raised by the Albany and its petitioning stockholders is, whether the department had authority to approve the issue of any bonds. They contend that the expression in the lease, "to the extent that it law-

fully may," refers to the law in force in Massachusetts when the lease went into effect, and controls in the construction of the lease, and limits the amount the Albany may be required to issue upon petition of the Central to $25,000,000, the amount of its capital stock. It appeared that at the time when the lease was made there were outstanding bonds of the Albany amounting to $7,485,000, and that from that time to and including June 12, 1913, six bond issues aggregating $17,515,000 have been approved, making a total of $25,000,000 outstanding bonds. By St. 1913, c. 784, §§ 15, 16, as amended by St. 1915, c. 303 (G. L. c. 160, § 47), it is provided in substance, that an issue of bonds or other evidences of indebtedness shall not exceed the amount of the capital stock unless any excess above such amount shall have been previously approved by the commissioners as consistent with the public interest, taking into consideration the fixed charges of such corporation, the amount and character of its contingent liabilities and other pertinent conditions; but that in no event shall the aggregate amount of all bonds, notes, or other evidences of indebtedness of which it is the maker or which it has assumed, exceed twice the amount of the capital stock. On July 27, 1917, by vote of the directors of the Albany and with the approval of the department, $1,000,000 in bonds were issued, bringing the total now outstanding up to $26,000,000.

It is provided in the lease that "If the Board of Directors of the lessor, by a majority vote, shall consent to or approve of any or all of such permanent additions and improvements or the doing of such other things, including the acquisition of real estate as aforesaid, or if, after a hearing, the Board of Railroad Commissioners of Massachusetts approve an issue of bonds therefor, fixing the amount and purposes for which said bonds may be issued, the lessor shall, at the request of said lessee and to the extent that it lawfully may, issue its bonds at such lawful rate of interest as may be determined by the lessee for such sums as may be necessary or specified by said Railroad Commissioners, to meet the cost and expense thereof, and shall take such lawful corporate action to that end as may be requested by said lessee"; and

also that "The lessee, its successors and assigns, may, at its own expense and charge, use the name of the lessor in making and prosecuting petitions to the Board of Railroad Commissioners or other boards of governmental or judicial authority, to secure the determinations aforesaid, from time to time, and the lessor hereby appoints said lessee its agent and attorney during the duration of this lease for the purpose aforesaid, but the lessor reserves the right in all cases to be heard before said Board or other authority in opposition to granting in whole or in part the prayer of such petition." It is further provided in the lease that if the board of railroad commissioners should "be deprived of its present power in reference to the issue of bonds by railroad companies and the same or similar power shall not be conferred by law on some other governmental or judicial authority, then no such bonds for improvement shall be issued without the approval of the Governor of the Commonwealth unless the Board of Directors of the lessor, by a majority vote, consents thereto."

The question, whether the department had authority to approve the issue of any bonds, requires us to determine what the parties reasonably intended by the words "to the extent that it lawfully may." It is to be noted that this expression is a part of a sentence which relates to the future, and naturally refers to what may lawfully be done when the time for action arrives. The parties must have been considering bond issues which might be made at any time in ninety-nine years. The word "may" itself naturally looks to the future, and indicates doubt instead of certainty. The meaning of this word in a contract depends upon the connection in which it is used. *Greene* v. *Robinson,* 41 Conn. 470. Payment in lawful money means in money lawful at the time of payment. *O'Neil* v. *McKewn,* 1 S. C. 147. It is probable that if the parties were intending to limit bond issues under the lease to the amount of outstanding capital stock of the Albany at the time of the lease, they would have stated the amount or made that meaning clear by some definite expression. There is nothing in the language used in other parts of the lease to show an intention to confine the future issues to the amount authorized when the lease was made. The parties in pro-

viding for an issue of bonds by the Albany for permanent additions or improvements not financed by the Central used the expression "required to be made, by force of any law now or hereafter existing, or by any court, tribunal, board of commissioners or public officers having lawful authority in the premises." The expression in this clause, "by force of any law now or hereafter existing," throws little light on the construction of the clause under consideration. In both cases the parties are referring to the law as it may be in the future — in one case to what the law may thereafter authorize and in the other to what the law may thereafter require. The clause "the lessor shall . . . and to the extent that it lawfully may" applies to an issue based upon additions and improvements assented to by a majority of the directors as well as to an issue based upon an approval of the commissioners without such assent.

It would be a strained construction of the lease to say that the parties intended that the directors of the Albany might vote to issue bonds for permanent additions and improvements made by the Central in accordance with changing provisions of law, but that the department could not on petition of the Central approve an issue in excess of the amount that was legally possible at the date of the lease.

When St. 1913, c. 784, was enacted, increasing the possible bond issue to twice the amount of the outstanding capital stock, the outstanding bonds of the Albany had reached the limit authorized by the law as it existed when the lease was made.

In 1917 an additional bond issue of $1,000,000 was authorized by the directors of the Albany at the request of the Central with the approval of the public service commission. The interpretation which the parties have placed upon doubtful or ambiguous words in a contract is of great weight in determining their true meaning. *New York Central Railroad* v. *Stoneman*, 233 Mass. 258. Considering the purpose of the lease, the reasons which would justify the issuance of bonds, and the possibility that the amount which might lawfully be issued would vary from time to time, that issues legal when the lease was made might become illegal during

the period of the lease, and that provisions as to the control of bond issues by public authority might change, we are of opinion that the parties intended by the expression used to refer to the law relating to a bond issue in force at the time when the question of its approval or authorization might arise. See *Joy* v. *St. Louis*, 138 U. S. 1, 38. *People* v. *Detroit United Railway*, 162 Mich. 460, 465. *Matter of Russell*, 163 Cal. 668. As thus construed, no constitutional right is violated. The obligation of the contract is not affected because by its terms the parties obligated themselves to be bound by the law as it might be when bonds were to be issued. The issuance of bonds by the Albany to cover the cost of permanent improvements and additions is an affair in which the superintending agency of the government has an interest. As a railroad is devoted to a public use, it is subject to public regulation and to the possible exercise by the Commonwealth of its police power. See *Munn* v. *Illinois*, 94 U. S. 113. *Bulkeley* v. *New York, New Haven & Hartford Railroad*, 216 Mass. 432. "One whose rights, such as they are, are subject to State restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject matter." *Hudson County Water Co.* v. *McCarter*, 209 U. S. 349, 357. *Union Dry Goods Co.* v. *Georgia Public Service Corp.* 248 U. S. 372. *Postal Telegraph-Cable Co.* v. *Associated Press*, 228 N. Y. 370, 375.

The Albany and petitioning stockholders made a request concerning the word "permanent" in the following terms: "The board has no jurisdiction to compel the Boston and Albany to issue bonds at the request of the New York Central unless the expenditures to be paid for by such bonds have been made for what are strictly 'permanent' additions and improvements to the property of the lessor." In dealing with this request and that numbered ten, hereafter mentioned, the department stated: "As we have considered, in arriving at our decision as to what of the items set forth in the petitioner's schedule were capitalizable, only such items as we deemed permanent additions and improvements within the meaning of the lease, in substance we have granted the

ninth and tenth requests." The contention under these requests is, that many items, in the schedule annexed to the petition, do not represent permanent additions and improvements and are not proper subjects for capitalization. The department in referring to this schedule stated that "An examination of the accounts and an inspection of the property of the railroad were made by the engineering and accounting divisions of the department . . . . Of the expenditures set forth in the schedule attached to the petition we are satisfied that to the amount of $2,990,000 they represent additions and improvements of a permanent character made upon the premises of the Boston and Albany railroad included in the lease, and are properly capitalizable."

The department rejected certain items in the schedule, and upon the record it is not possible for us to say what those items were, or that any were included in the findings which we could say as matter of law did not represent permanent additions and improvements. The word "permanent" as used in the lease, is not the equivalent of "perpetual." See *Lowell* v. *French*, 6 Cush. 223, 224. *Trippeer* v. *Couch*, 110 Ore. 446. *Knickerbocker Co.* v. *Seattle*, 69 Wash. 336. In *Texas & Pacific Railway* v. *Marshall*, 136 U. S. 393, which dealt with an agreement permanently to establish a terminus at a certain place, it was decided that the word permanent is "to be construed with reference to the subject matter" and the agreement was complied with "by the establishment of the terminus . . . with no intention at the time of removing or abandoning [it]." See *Mead* v. *Ballard*, 7 Wall, 290. In deciding whether additions and improvements were permanent, the department had the right to take into consideration not only the time they would last, but to some extent the purpose in making them. The determination of this matter called for the exercise of sound judgment, and it cannot be said that the department erred as matter of law. No sufficient reason appears for sending the case back for further hearing upon this question. Request number ten of the Albany is based upon methods of accounting by the interstate commerce commission in the matter of making charges to investment as distinguished from operat-

ing expenses. There are no facts stated in the record which make this request relevant and we find nothing unlawful in the manner in which the department dealt with it.

The remaining requests for rulings made to the department, upon which the Albany and petitioning stockholders now rely, are three in number. These are to the effect that the issue of bonds in 1917 does not estop the Albany from asserting lack of power in the Central or in the department to compel a further issue of bonds by the Albany and that it does not estop the department from considering on its merits or from rejecting the present application; they were in substance given. No one is now objecting to these rulings and in this opinion it is assumed that they were right, interpreting the word "compel" to mean "approve" as applied to the department.

The Central contends that the department had no right to consider depreciation in determining the amount for which the bond issue should be approved; that it was limited to the provisions of paragraph 8 of the lease and to an inquiry as to the amount of permanent additions and improvements; and it further contends that if the department had a right to consider depreciation, it adopted wrong principles in determining its amount.

In *Stein* v. *Strathmore Worsted Mills*, 221 Mass. 86, 89, 90, the court said: "The controversy in the case at bar centres on the point whether a reasonable depreciation on the building and machinery and such like physical property owned and employed by the defendant in the production of its manufactured goods should be included among the elements making up the amount to be deducted from the receipts. It is clear that the value of buildings and machinery devoted to the manufacture of textile products cannot in the nature of things be the same after a year of use that it was at the beginning. There must have been deterioration. Machinery wears out. Buildings tend toward decay. Both may diminish in value by reason of advance in the state of the art of manufacturing, or by inventions of more effective devices. In order that any such concern may be maintained at uniform efficiency, there must be allowance for depreciation."

Keeping machinery and buildings in a usable condition by repairs and maintenance "is a quite different matter from depreciation, which is a deterioration arising from age and use and improvements due to better methods, more economical and efficient designs, inventions and general advance in the art, notwithstanding reasonable current repairs." In a case involving the question whether the trustees operating the Boston Elevated Railway had made too large a charge for depreciation, the court said: "Manifestly it was rational to make adequate provision in the management of property of this nature for charges for depreciation, obsolescence, repair and maintenance." *Boston* v. *Treasurer & Receiver General,* 237 Mass. 403, 416. "In valuing the plant of a carrier for purpose of fixing rates there should be proper deductions for depreciation." *Minnesota Rate Cases,* 230 U. S. 352, 355. The method of determining depreciation by taking as a basic cost book value, or reproduction of property which will deteriorate with use, and deducting therefrom a percentage for the time it has been in use based upon the probable length of its life, has been in principle either approved by the court or held to be not wrong as matter of law. *Stein* v. *Strathmore Worsted Mills, supra. Boston* v. *Treasurer & Receiver General, supra. Lapham* v. *Tax Commissioner,* 244 Mass. 40. *Knoxville* v. *Knoxville Water Co.* 212 U. S. 1. The determination of the public interest under G. L. c. 160, § 47, required the exercise by the department of broad discretionary powers. We cannot say that it erred in considering the provisions of the lease and the extent, if any, to which in its judgment they had been violated. The Central bound itself at its own expense to maintain and keep the railroad property demised in good order and condition during the term of the lease. It also agreed at the expiration of the lease to return the property with all improvements and additions to the lessor in all respects in as good condition as to its road, roadbed, bridges, lands, wharves, yards, terminal facilities, depots, stations, shops and other structures, and as to its rolling stock, machinery, materials, tools, appliances, equipment and other property and rights, real and personal, as the same were in at the time the lease was executed, or might be put in

during the continuance of the lease, so that there should be no depreciation to some or any part thereof.

The statute (St. 1900, c. 468) authorizing and consenting to the lease provided that the Central during the term of the lease should not diminish or permit to be diminished the facilities for travel and business over the Albany or any part of it, nor lower or permit to be lowered the standard of its service as shown in the quality and equipment of its cars, in the construction and care of its stations, station grounds and approaches thereto, and in the provisions made for the security and convenience of the public. These provisions were agreed to by the contracting parties and the lease was made subject to them. The lease could not have become effective had not the Commonwealth, acting through the Legislature, authorized and consented to it by the passage of this act. See *York & Maryland Line Railroad* v. *Winans*, 17 How. 30. *Thomas* v. *Railroad Co.* 101 U. S. 71. By the act consenting to the lease the Legislature has in effect said that the terms of the lease are in furtherance of the public interest. The department had a right to take into consideration those terms in deciding whether or not the bond issue was consistent with the public interest. The interpretation of the lease by the department, namely, that "The lease contemplates, in our judgment, the maintenance of the railroad in good order and condition during the term of the lease and its return, at the termination of the lease, in as good condition as it was at the beginning of the term or may have been thereafter put in, with all improvements and additions thereon, without impairment," is not inconsistent with its provisions.

In deciding whether the department could consider accrued depreciation in approving the bond issue, we must have in mind not only the language of the lease, but all attendant circumstances, including the purpose to be accomplished by it, the term for which it is to run, the fact that the parties are public service corporations and in a measure subject to public control, that the matter is not wholly between the two corporations but that the Commonwealth by the act approving the lease has rights to be

considered and the public has interests to be protected, together with the fact that the department was called upon to act in the matter not only because of the requirements of the statutes but by the terms of the lease itself. The contention, that the question of depreciation cannot be considered by the department until the end of the term, is not well founded. The terms of the lease do not require that construction. The fact that there is no covenant requiring a reserve for depreciation does not make the order of the department unlawful. In addition to the clause in express terms referring to depreciation, there were the other provisions, hereinbefore quoted, taken from the lease and the act approving it, under which the department had a right to consider the question of depreciation as a pertinent fact in deciding what bond issue to approve as consistent with the public interest. We interpret the order approving the amount named as consistent with the public interest to mean that, because of the terms of the lease and the approving act, a larger issue would not be consistent with that interest. It was not contended that there was depreciation in the roadbed, and the question of depreciation of equipment was not presented because all equipment was owned by the Central. The department, however, could consider depreciation in stations, bridges, yards, and the rest of the physical plant. It appears from the findings that "the determination of what depreciation has accrued in the depreciable property of the Boston and Albany Railroad since the lease to the time of the filing of the petition is one which largely must be determined by the exercise of sound judgment by this department. The New York Central Railroad contends that it has adequately provided for the accrued depreciation. It presented a schedule of expenditures amounting to $1,521,044.94, that its claims were charged to operating expenses between July 1, 1900, and December 31, 1907, as to which $926,754.03 might properly have been charged to investment. It also asserts that since the time when it took over the property of the Boston and Albany Railroad under the lease many credits have been given to the capital account of the Boston and Albany Railroad for

property retired which was not originally capitalized. Instances of such retirements were shown at the hearings. Moreover, during the years 1912 and 1913 three issues of bonds were sold which netted premiums aggregating $52,749.58, which amount was invested in the property . . . . We are of opinion and so find that the gross accrued depreciation of the depreciable property of the Boston and Albany Railroad since the execution of the lease to November 30, 1922, to be approximately $2,450,000. Taking into consideration such expenditures by the New York Central Railroad as we think properly may be used in offsetting accrued depreciation and the premiums realized in the issue of bonds since the execution of the lease, we are of the opinion and so find that the net accrued depreciation of the property of the Boston and Albany Railroad accruing since the execution of the lease to November 30, 1922, to be $1,490,000. Thus, in our judgment, bonds to the face value of $1,500,000 may properly be issued to reimburse the New York Central Railroad for expenditures made by it on permanent additions and improvements."

If it be assumed that the question whether, as matter of law, the department erred in its method of determining depreciation is open, the report of the department discloses no basis upon which we can say that its method of reaching the conclusion on that subject was unlawful. But the Central sought to establish the unlawfulness of the method adopted for determining depreciation by its offer of stenographic notes of oral testimony and arguments at the hearings and conference before the department, and of certain reports made to the department, and certain votes, letters and schedules referred to in the reservation. This evidence was objected to by the Albany, the intervening stockholders and the department. The reservation states that this evidence may be considered by the full court if it should have been admitted, and that any party might, at his own expense, print any or all of it in his brief for the use of the full court. It does not appear from the stipulation filed that the evidence offered before the single justice was all the evidence considered by the department. The decision stated

in substance that the order was made "after notice and a hearing and further investigation." The report shows that the engineers and accountants of the department examined accounts and inspected the property of the railroad, and that their testimony as to the alleged expenditures for improvements and their estimate of accrued depreciation were based upon the inspection as well as the accounts examined. It is apparent that if the evidence offered before the single justice were admitted the court would not have all the evidence in the case, and it would not be possible to say what weight the department gave to the evidence offered or on what evidence the question of the amount of depreciation was decided.

The statute (G. L. c. 25, § 5) gives the Supreme Judicial Court jurisdiction in equity to review, modify, amend or annul any ruling or order of the commission but only to the extent of the unlawfulness of such ruling or order. It requires the commission to rule upon any question of substantive law properly arising when requested so to rule. It provides for objection to the ruling made by any party aggrieved. In order further to secure the rights of parties and establish the practice, it is provided that a failure to rule upon a request is to be taken and recorded as a ruling adverse to the party requesting the ruling; and the department is required to file a written decision assigning its reasons therefor. The method of obtaining a review is then stated to be in equity in the Supreme Judicial Court. The burden of proof is on the party adverse to the commission to show that its order is invalid. The purpose of the statute is to provide for a review of questions of law raised before the department. It appears that the department has undertaken in its report to state in substance every ultimate finding of fact upon which its decision rests, and certain agreed facts were found by the single justice.

The position of the Central in asking for a review of the order is, in some respects, like that of a party appealing from a final decree in equity without having saved any rights in the trial court. It is assumed for the purposes of this decision that the Central is entitled to present the question,

whether upon the facts found the order was unlawful. See *Lannin* v. *Buckley*, 256 Mass. 78, 82. Power to review decisions of any State department is given in general terms by G. L. c. 160, § 252, but the provisions of G. L. c. 25, § 5, being more specific, are controlling in these proceedings. The provisions for review as they have been interpreted sufficiently protect the constitutional rights of the parties. See *Opinion of the Justices*, 251 Mass. 569, 611. "The proceedings before the public service commissioners are in part investigations into facts. . . . When the public service commission has concluded its investigation, it makes an order and the statute imposes upon the commission the duty to enforce that order or to defend that order if attack is made upon it. St. 1913, c. 784, § 28." The power of this court under § 27, of that act, "is confined to dealing with 'rulings or orders of the commission which are unlawful to the extent only of such unlawfulness.' Manifestly no power to rehear facts is conferred by these words. *Paine* v. *Newton Street Railway*, 192 Mass. 90. The findings of fact of the commission are not to be reviewed or revised by the hearing of evidence in a case like the present." *Donham* v. *Public Service Commissioners*, 232 Mass. 309, 327, 328. Under a statute giving the Superior Court and the Supreme Judicial Court jurisdiction in equity "to review, annul, modify or amend the rulings of any State department or commission relative to street railways as law and justice may require," it was held that a finding made in good faith was not open to review. *City Council of Salem* v. *Eastern Massachusetts Street Railway*, 254 Mass. 42, 45. The petitioner in the case last cited alleged in its bill that the location of a street railway had been originally granted upon certain representations by the street railway company. The court said: "These allegations are immaterial and irrelevant, as they present questions of fact. The jurisdiction of the court is limited to determining whether the decision of the department contains any erroneous rulings of law. In arriving at the conclusion reached by a majority of the members of the department, it does not appear that any issue of law was involved, or that any ruling was made." The "court does

not sit as a board of review to substitute its judgment for that of the Legislature or of the commission lawfully constituted by it, as to matters within the province of either." *Minnesota Rate Cases, supra.* St. 1921, c. 499, relating to the control of the sale of securities by the commission supervising the department of public utilities, provides in § 7 for a review by the courts of rulings of law, findings of fact and orders, but in § 3 (d) securities of a corporation owning or operating a railroad are exempted from the provisions of the act.

So far as the record discloses, the Central made no objection to testimony or its relevancy or to the right of the department to make its own independent investigation. The stenographic notes and other evidence objected to were not admissible. In the case of *Haven* v. *County Commissioners*, 155 Mass. 467, a petition for a writ of certiorari, the evidence heard by the county commissioners was held to be properly before the court, but an examination of the record in the case discloses the fact (which does not appear in the printed report) that requests for rulings based on the whole evidence were presented to the county commissioners. In *Paine* v. *Newton Street Railway, supra,* a question was raised at the hearing before the railroad commissioners upon the whole evidence. Furthermore, in that case it did not appear that there was any objection made to the introduction of the evidence heard by the railroad commissioners. That case limited the review under the statute then applicable to rulings of law made by the railroad commissioners. See *Westport* v. *County Commissioners*, 246 Mass. 556; *Clough* v. *Cromwell*, 250 Mass. 324.

The Central cannot question the standard adopted by the department in determining depreciation. It did not request that one standard rather than another be used and the reasons assigned by the department for its decision do not indicate the standard adopted.

No argument has been addressed to us concerning the provisions of § 20 (a) added to the interstate commerce act, by § 439 of c. 91, 41 U. S. Sts. at Large, 494, which relates to the approval by the interstate commerce commission of the

issuance of securities by interstate carriers and we have not undertaken to pass upon any question which might arise under that act.

Upon a consideration of all questions open to the parties which have been argued, we see no sufficient reason for annulling, modifying or amending the order. In each case a decree dismissing the petition is to be entered.

*Ordered accordingly.*