City of Malden vs. Metropolitan Transit Authority & another.

Suffolk.   February 5, 1952. — March 7, 1952.

Present: Qua, C.J., Ronan, Wilkins, & Williams, JJ.

*Public Utilities. Quasi Judicial Tribunal. Metropolitan Transit Authority. Trackless Trolley. Statute, Repeal. Words, "Formal."*

The "public hearing" required by St. 1947, c. 544, § 10, upon an application by the Metropolitan Transit Authority to the department of public utilities for a permit to operate trackless trolleys may be conducted by "an employee of the department designated and assigned" as provided in G. L. (Ter. Ed.) c. 25, § 4, as appearing in St. 1938, c. 221.

The provisions of St. 1947, c. 544, § 10, that the department of public utilities may grant permits for trackless trolleys to the Metropolitan Transit Authority and that "no other permit, license, certificate or approval shall be required" repealed by implication G. L. (Ter. Ed.) c. 163, § 6, so far as the Authority is concerned, within its territory.

Bill in equity, filed in the Supreme Judicial Court for the county of Suffolk on December 29, 1950.

The suit was heard by *Spalding*, J.

*B. Kaplan*, City Solicitor, for the plaintiff.

*W. J. Fitzsimons*, for Metropolitan Transit Authority.

*D. H. Stuart*, Assistant Attorney General, for department of public utilities.

Wilkins, J.   This is a bill in equity to annul an order of the defendant department of public utilities granting a permit to the defendant Metropolitan Transit Authority to operate trackless trolleys over certain public ways in the city of Malden; to erect, establish and maintain the necessary poles to support the wires of its electric system; to attach wires, appliances, and apparatus to the said poles; and to make the necessary underground and surface alterations to the streets. G. L. (Ter. Ed.) c. 25, § 5. See G. L. (Ter. Ed.) c. 161, § 142; *Boston & Albany Railroad* v. *New York Central Railroad*, 256 Mass. 600, 618. The case was heard by a single justice, who entered an order for a

decree dismissing the bill. The plaintiff argues exceptions to the denial of its requests for rulings, and to the order for a decree. The single justice made voluntary, but comprehensive, findings of the material facts.

On February 23, 1950, the defendant transit authority filed its petition for the permit with the defendant department. It concerned both the city of Malden and the city of Medford. On April 21, 1950, the chairman of the commission, with the concurrence of three other commissioners, designated S. P. Coffin, chief engineer of the department, to hear, examine, and investigate the matters referred to in the petition and to report in writing to the commission. G. L. (Ter. Ed.) c. 25, § 4, as appearing in St. 1938, c. 221. On that date a hearing was held before Coffin. On June 30, 1950, the commission voted to reopen the hearing. On July 27, 1950, Coffin was designated in the same manner to conduct the reopened hearing, which was held on that date. On December 14, 1950, Coffin filed his report, and on that same day the commission, all members participating, filed its findings, order, and determination, which were the same as the Coffin report except for omitting three paragraphs.

We pass by the contention of the department that the city has no standing to maintain this bill in order that we may rest our decision upon the merits of the controversy.

1. The first question raised by the city's requests[1] is

[1] "1. That the hearings that were held by the D. P. U. on April 21, 1950, and July 27, 1950, on the petition D. P. U. 8957 were not hearings in accordance with the requirements of the provisions of c. 544, § 10, of the Acts of 1947, and the permits granted were therefore void. 2. Under the provisions of c. 544, § 10, of the Acts of 1947 the hearing must be conducted by at least a majority of the members of the D. P. U. 3. Under the provisions of c. 544, § 10, of the Acts of 1947 the persons making the determination of public interest and granting the permits must be the same persons who heard the testimony presented at the hearing. 4. Under the provisions of c. 544, § 10, of the Acts of 1947 a hearing conducted by an employee designated by the D. P. U. to hear, examine and investigate the matter is not a public hearing within the purview of the above provisions. 5. The following clause in General Laws, c. 25, § 4, namely, 'provided that any such matter may be heard, examined, and investigated by an employee of the department designated and assigned thereto by the chairman, with the concurrence of at least three commissioners,' does not apply to the provisions of c. 544, § 10, of the Acts of 1947 under which a public hearing must be held. 6. The public hearing referred to in c. 544, § 10, of the Acts of 1947 is a quasi judicial proceeding in which the evidence should be received and weighed by the persons trying the facts."

that the hearings were not conducted as required by St. 1947, c. 544, establishing the Metropolitan Transit Authority, § 10 of which provides: ". . . the department may upon application by, or under authority of, the trustees grant to the authority (1) locations . . . (2) licenses . . . and (3) permits for the operation on public ways . . . of trackless trolleys and necessary poles, wires and other appliances therefor . . . and all upon such routes and in such manner as the department, after due notice to the mayors of the cities . . . and a public hearing, may determine to be in the public interest, and no other permit, license, certificate or approval shall be required." It is contended that the "public hearing" so required is not satisfied by a hearing as authorized in G. L. (Ter. Ed.) c. 25, § 4, as appearing in St. 1938, c. 221, which provides: "In the hearing of all matters other than those of formal or administrative character coming before the commission, one or more commissioners shall participate and in the decision of all such matters at least three commissioners shall participate; provided that any such matter may be heard, examined and investigated by an employee of the department designated and assigned thereto by the chairman, with the concurrence of at least three commissioners. Such employee shall make a report in writing relative to every such matter to the commission for its decision thereon. For the purposes of hearing, examining and investigating any such matter such employee shall have all of the powers conferred upon a commissioner by section five A [relative to summonsing witnesses, administering oaths, and taking testimony], and all pertinent provisions of said section shall apply to such proceedings. In every such case the concurrence of a majority of the commissioners participating in the decision shall be necessary therefor."

The city urgently argues that a contested hearing is formal in character within the meaning of the phrase, "In the hearing of all matters other than those of formal or administrative character" in c. 25, § 4, as amended, and, in particular, that the "public hearing" required by St. 1947,

c. 544, § 10, is formal in character. In support of its argument it cites certain cases chiefly in the Federal courts giving common law definitions, and relies upon the history of c. 25, § 4. A detailed recital we believe would add nothing to our jurisprudence. It is enough to say that we do not adopt the city's contention. While no comprehensive definition of "formal" is called for, we think that in the statute in question, where it is grouped with "administrative," it refers in general to matters of routine or of form as distinguished from matters of substance. If the city's view were to be adopted, there would be serious doubt as to just what hearings would be embraced within "the hearing of all matters other than those of formal or administrative character." So far as concerns St. 1947, c. 544, § 10, there is no reason to suppose that the Legislature in this relatively recent enactment intended the department to handle matters relating to the Metropolitan Transit Authority in a more time consuming manner than theretofore required in the cases of other public utilities in general.

The city's requests numbered 1, 3, 4, and 5 were rightly denied. As to the second request, the single justice correctly stated, "This request is not entirely clear. I rule that a majority of the commissioners must participate in the decision which was made in this case. If, however, the request means that the hearing of the case in the first instance had to be before a majority of the commissioners and could not be heard by an employee designated and assigned by the chairman with the concurrence of at least three commissioners, it is denied." As to the sixth request, the single justice stated, "This request is somewhat obscure. I rule that the public hearing referred to in § 10 is a quasi judicial proceeding. I further rule that the commissioners in deciding the case must consider and weigh the evidence. I also rule that the employee designated by the commissioners to hear the case under G. L. (Ter. Ed.) c. 25, § 4, must consider and weigh the evidence. If the request means that the commissioners must receive the evidence in the first instance and that such evidence cannot be received by the

employee designated to hear the case under § 4 it is denied." In this there was no error.

2. Likewise no error appears in the denial of requests numbered 7, 8, and 9, which asked for rulings that on all the evidence the findings of the department in certain respects were not warranted by the evidence. It is now broadly contended by the city that the determination of the department that the permit was in the public interest was not so warranted. Under G. L. (Ter. Ed.) c. 25, § 5, the jurisdiction of this court "to review, modify, amend or annul any ruling or order of the commission" is sharply limited "to the extent of the unlawfulness of such ruling or order." There is no power in this court to review or revise findings of fact by the department. *Paine* v. *Newton Street Railway*, 192 Mass. 90, 93. *Donham* v. *Public Service Commissioners*, 232 Mass. 309, 328. *City Council of Salem* v. *Eastern Massachusetts Street Railway*, 254 Mass. 42, 45. *Boston & Albany Railroad* v. *Department of Public Utilities*, 314 Mass. 634, 636. *Lowell Gas Co.* v. *Department of Public Utilities*, 324 Mass. 80, 84–85. The single justice, with no exception being taken, admitted in evidence the transcript of the proceedings before the department, because he felt that "whether a given finding was warranted on the evidence might conceivably present a question of law." It is sufficient for present purposes to assume the correctness of this ruling, *Boston & Albany Railroad* v. *New York Central Railroad*, 256 Mass. 600, 617–618, since an examination of the record of those proceedings does not sustain the city's contention.

3. Requests numbered 10 to 12, inclusive,[1] relate to the authority of the department under St. 1947, c. 544, § 10, to

[1] "10. The D. P. U. has no authority under the provisions of c. 544, § 10, of the Acts of 1947 to grant a permit to the Metropolitan Transit Authority to operate vehicles as ordered by the D. P. U. 11. The D. P. U. has no authority under the provisions of c. 544, § 10, of the Acts of 1947 to grant a permit to the Metropolitan Transit Authority to erect, establish and maintain the necessary poles to support the wires of the electric system of the Metropolitan Transit Authority as ordered by the D. P. U. 12. The D. P. U. has no authority under the provisions of c. 544, § 10, of the Acts of 1947 to grant to the Metropolitan Transit Authority permission to attach the wires, appliances and electrical appliances and apparatus to said poles and to make the underground and surface alterations to the street necessary for those purposes as ordered by the D. P. U."

grant permits to operate trackless trolleys. Under the general statute relating to trackless trolley companies, in cities the board of aldermen, with the approval of the department, has authority to grant permits. G. L. (Ter. Ed.) c. 163, § 6; c. 161, § 7. Although not expressly referred to, c. 163, § 6, was necessarily repealed, so far as concerns the Metropolitan Transit Authority, in the cities and towns within its territory, which includes Malden and Medford, St. 1947, c. 544, § 1, by § 10 of that act, quoted above, which gives the department an exclusive right in that territory. There is no escape from the language of § 10 that "no other permit, license, certificate or approval shall be required." There is a partial repeal of c. 163, § 6, "by clear implication." *Mayor of Haverhill* v. *Water Commissioners of Haverhill,* 320 Mass. 63, 68. See *Mayor of Gloucester* v. *City Clerk of Gloucester,* 327 Mass. 460. Tending to confirm this conclusion is the significant omission in St. 1947, c. 544, § 26, as amended by St. 1950, c. 117, § 2, which enumerates the provisions of the General Laws specifically made applicable to the Metropolitan Transit Authority, of G. L. (Ter. Ed.) c. 161, §§ 7, 70, 71 (granting to street railway companies by local authorities, subject to the approval of the department, of street railway locations and extensions and alterations of locations); c. 161, §§ 55–61 (approval by local authorities and granting by the department of private land locations to street railway companies); c. 163 (granting to street railway companies by local authorities, subject to the approval of the department, of permits for trackless trolley lines); c. 166, § 22 (granting by local authorities of certain pole and conduit locations to street railway companies); and c. 159A (requiring operators of motor vehicles for the carriage of passengers for hire to obtain bus licenses from the local authorities and a certificate of public convenience and necessity from the department).

There is no force in the suggestion that St. 1947, c. 544, § 10, is somehow unconstitutional as being discriminatory.

The exceptions are overruled and a final decree is to be entered dismissing the bill.

*So ordered.*