DAVID S. MILLER & others *vs.* EMERGENCY HOUSING COMMISSION.

Suffolk.   October 7, 1953. — December 31, 1953.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Zoning. Emergency Housing Commission. Boston. Housing. Statute,* Repeal. *Practice, Civil,* Judgment nunc pro tunc.

The emergency housing commission established by St. 1946, c. 592, had power in an appropriate case to grant a variance in the application of the zoning law of Boston, St. 1924, c. 488, as amended, upon appeal to it from a refusal of the board of appeal of Boston to grant the variance. [697]

On facts respecting a parcel of land in Boston and the neighborhood of such parcel, it could not be said as matter of law that it was a "substantial detriment to the public good" or "substantially derogating from the intent and purpose" of the Boston zoning law or in excess of the powers of the emergency housing commission under St. 1946, c. 592, § 3, as amended, for the commission to grant a variance in the application of the Boston zoning law permitting the erection of an apartment house on such parcel not conforming to the zoning re-

strictions in that it would house twenty-eight families instead of two, would have three stories instead of two and one half, would have less depth of rear yard and less set-back at one corner than required, would occupy a larger percentage of the parcel than allowed, and would include the storage of several thousand gallons of fuel oil. [698]

A variance in the application of the Boston zoning law, St. 1924, c. 488, as amended, permitting the erection of a building of a greater height than that allowed by the zoning restrictions, which was granted by the emergency housing commission under St. 1946, c. 592, § 3, as amended, upon appeal from a refusal of the board of appeal of Boston to grant it, did not need for its effectiveness confirmation by the board of zoning adjustment of Boston under § 19 of the zoning law as appearing in St. 1941, c. 373, § 18. [698–699]

In a certiorari proceeding to quash a decision of the emergency housing commission granting under St. 1946, c. 592, § 3, as amended, variances in the application of the Boston zoning law in connection with a proposed apartment house, where it appeared that after the landowner had obtained a building permit by reason of the commission's decision and judgment dismissing the petition had been entered in the trial court and while an appeal from the judgment was pending the statute creating the commission, St. 1946, c. 592, was repealed without a saving clause by St. 1953, c. 284, this court, upon deciding that there was no merit in the appeal, affirmed the judgment as of a date before the enactment of the repealing statute. [699–700]

PETITION, filed in the Superior Court on May 19, 1952.

The case was heard by *Nagle, J.*

*Daniel G. Rollins,* for the petitioners Miller and others.

*Morris Michelson,* for the petitioner Kahn.

*Harris A. Reynolds,* Assistant Attorney General, (*Harold Katz* with him,) for the respondent.

SPALDING, J. This is an appeal from a final judgment dismissing a petition for a writ of certiorari to quash a decision of the emergency housing commission which granted certain variances from the zoning law of the city of Boston. G. L. (Ter. Ed.) c. 213, § 1D, inserted by St. 1943, c. 374, § 4. The petitioners are owners of property which is in the vicinity of that here involved, and the town of Brookline. Whether the town has any standing as a petitioner need not be decided, as all the questions raised by it are also raised by the other petitioners. The respondents are members of the emergency housing commission created by St. 1946, c. 592, as amended, and will be referred to hereinafter as the

commission. The case was heard on the petition and the return.

The owner of the property involved in the commission's decision is the Co-Ray Realty Company, Inc., hereinafter called Co-Ray.[1] The property is a parcel of vacant land containing 20,814 square feet at the corner of Corey and Evans roads and is located partly in Boston and partly in Brookline. The area which is in Brookline is 5,126 square feet and the area which is in Boston is 15,688 square feet. Co-Ray desires to build a twenty-eight unit apartment house on its Boston land. This land, however, is located in a "general residence district, R–35," and the proposed building would not conform to the Boston zoning restrictions in the following respects: twenty-eight families instead of two; three stories instead of two and one half; a rear yard of an average of seven and one half feet instead of twenty-five; a set-back at one corner of the building of less than the required ten feet; a building area of 42.75% of the lot instead of 35%; and the storage of five thousand gallons of fuel oil.

From a refusal by the board of appeal of the city of Boston to grant variances, Co-Ray appealed to the commission. After a hearing, the commission on April 18, 1952, voted to grant the variances. On April 30, 1952, the building commissioner of the city of Boston issued a permit to Co-Ray for the construction of the proposed apartment house on the Boston land. The act creating the commission was repealed by St. 1953, c. 284, which was enacted on April 22, 1953, and became effective ninety days later. The present proceeding was begun on May 19, 1952, and the judgment dismissing the petition was entered on January 2, 1953.

The principal contentions of the petitioners are that the commission exceeded its powers in granting the variances in question and that in any event the repeal of the statute creating the commission nullified its decision.

[1] For prior litigation involving this property see *Brookline* v. *Co-Ray Realty Co. Inc.* 326 Mass. 206, and *Co-Ray Realty Co. Inc.* v. *Board of Zoning Adjustment of Boston,* 328 Mass. 103.

The commission was created by St. 1946, c. 592, the caption of which reads: "An Act to facilitate and encourage the providing of homes during the present emergency." Following the preamble, which states that an acute shortage of housing exists in the Commonwealth, § 1 declares in part "that there are many suitable sites for . . . dwelling places which cannot lawfully be used for such purpose . . . because of the zoning ordinances and by-laws and building codes . . . [and] that there are many instances in which a literal enforcement of . . . [zoning ordinances and by-laws and building codes, ordinances and by-laws] would involve substantial hardship to one or more veterans and their families and other inhabitants and where substantial relief might be granted without substantial detriment to the public good and without substantially derogating from the intent and purpose of such ordinance or by-law; and that a waiving of some of the literal requirements of such codes, ordinances and by-laws in appropriate cases during the present emergency will be for the good and welfare of the commonwealth."

Section 3, as amended, establishes the commission and further provides: "Upon appeal or petition by any person aggrieved by the refusal of a board of appeals of a city or town referred to or appointed under section thirty of chapter forty of the General Laws or similar provisions of a special law, or any board of appeals under a local building ordinance or by-law or a building code, to reverse any order or decision of any inspector of buildings or other administrative official having similar duties, to decide in favor of the applicant on any matter upon which such board of appeals is required to pass, or to effect any variance in the application of any zoning or building ordinance, by-law or code, the commission by an affirmative vote of four of its members may . . . reverse such order or decision, decide in favor of such applicant or effect any such variance. The commission shall not grant any relief under this section unless it finds that such relief may be granted without substantial detriment to the public good and without sub-

stantially derogating from the intent and purpose of such ordinance, by-law, or code . . . . The determination of the commission under this section shall be final."

In Boston, unlike other cities and towns where the matter is controlled by ordinances or by-laws, zoning is regulated by statute. St. 1924, c. 488, as amended. The petitioners contend that the commission had no power to grant the variances in question. That power, it is argued, exists only with respect to an ordinance, by-law or code and c. 488 cannot be classed as such. It is true that the Boston zoning statute is not specifically mentioned in the statute defining the commission's powers, but we think that its language is sufficiently broad to embrace the Boston statute. The commission was empowered to act with respect to decisions of local boards which refuse variances "in the application of any zoning or building ordinance, by-law or code." It is also to be noted that the commission has jurisdiction not only with respect to one aggrieved by a decision of a board of appeals of a city or town referred to or appointed under G. L. (Ter. Ed.) c. 40, § 30, but also in a case of one aggrieved by a decision of a board referred to or appointed under "similar provisions of a special law." And the right of appeal is given to such aggrieved person where there has been a refusal by such board "to decide. in favor of the applicant on any matter upon which such board of appeals is required to pass." Considering this language together with the purpose of the act, namely, to alleviate the housing shortage in the entire Commonwealth and not merely a portion of it, we are of opinion that the construction for which the petitioners contend cannot prevail.

The commission may grant relief only if it may be done "without substantial detriment to the public good and without substantially derogating from the intent and purpose" of the zoning laws. In this respect the limitation is similar to that imposed on boards of appeals by G. L. (Ter. Ed.) c. 40, § 30. See *Opinion of the Justices,* 321 Mass. 759, 765. But within this outside limitation it is apparent that the authority of the commission and that of boards of appeals

is not coextensive. A board of appeals can grant variances only where a literal enforcement of the law would involve "substantial hardship to the appellant." But the commission is not subject to this limitation. The commission may grant variances where to do so will alleviate the housing shortage. The question, then, is whether the variances granted here were detrimental to the public good and substantially derogated from the purpose and intent of the zoning law. Whether a variance is within permissible limits is largely a matter of degree. The variances as to number of stories, percentage of lot used, set-backs, and rear yard are not so drastic that as matter of law they can be said to defeat the intent and purpose of the zoning law. Nor do we think the variance allowing the storage of five thousand gallons of fuel oil transcended permissible limits. These questions are primarily questions of fact although they may become questions of law. In so far as they remain in the realm of fact they are matters for the commission to determine. See *Norcross* v. *Board of Appeal of Boston*, 255 Mass. 177, 186.

A more difficult question is the variance respecting the number of families. The number allowed by the variance, twenty-eight, is fourteen times that allowed in a "general residence district, R–35." That this is a substantial departure from the type of use permitted in such a district is obvious. The commission, however, found that across the street from Co-Ray's property is a nursing home and that "to the north and west of said land are many apartment houses located in the R–40 district of which the appellant's land had been a part until the change made by the board of zoning adjustment on November 3, 1950." In view of these facts and having in mind the purpose of the statute creating the commission, we cannot say that a variance for the housing of twenty-eight families must as matter of law be found to be in substantial derogation of the zoning law.

Contrary to the petitioners' contention, the commission was not required to submit its variance as to the height of the building to the board of zoning adjustment of Boston

for approval. Under § 19, as amended, of the Boston zoning law (St. 1924, c. 488) "No decision of the board of appeal *permitting* the erection or alteration of a building to an extreme height greater than that otherwise authorized" can become effective until confirmed by the board of zoning adjustment (emphasis supplied). In the case at bar the board of appeal did not grant Co-Ray's application for variance. On the contrary, it denied the application. Section 19, therefore, did not apply. Where, as here, the board of appeal had denied relief, the aggrieved person under § 3 of St. 1946, c. 592, could appeal directly to the commission.

The petitioners further argue that, even if the decision of the commission was proper, such decision was nullified when the statute creating the commission was repealed without a saving clause.[1] They invoke the principle laid down in *New London Northern Railroad* v. *Boston & Albany Railroad*, 102 Mass. 386, at page 389, which was quoted with approval in *Pittsley* v. *David*, 298 Mass. 552, at page 555, that "a statute which wholly repeals an earlier one, either expressly or by implication, without any saving clause, makes it ineffectual to support any proceedings, whether not yet begun, or pending at the time of its passage, and not already prosecuted to final judgment vesting absolute rights." The petitioners argue that because the decision of the commission could be, and was in fact, reviewed by certiorari (*Opinion of the Justices*, 321 Mass. 759, 765) its decision was not a "final judgment."

We assume without deciding that the principle just stated applies to a situation of the sort here involved. But even if it does, the petitioners ought not to prevail. The present case is an appropriate one for the entry of a nunc pro tunc judgment, thereby avoiding the effect of the rule of the *New London* case, if such rule is applicable. One of the functions of such a judgment is "to prevent a failure of justice resulting, directly or indirectly from delay in court

[1] As stated above, St. 1946, c. 592 (the act creating the commission), was repealed by St. 1953, c. 284, which became effective ninety days after April 22, 1953. Chapter 284 contained no saving clause.

proceedings subsequent to a time when a judgment, order or decree ought to and would have been entered, save that the cause was pending under advisement." *Perkins* v. *Perkins,* 225 Mass. 392, 396. It has been held that a nunc pro tunc order for judgment on a verdict may properly be entered where a statute on which liability was founded has been repealed after the verdict. *Springfield* v. *Worcester,* 2 Cush. 52, 61–62. *Finnegan* v. *Checker Taxi Co.* 300 Mass. 62, 66–67. See G. L. (Ter. Ed.) c. 235, § 4. In each of these cases the plaintiff had a verdict based on a cause of action founded upon a statute, but between the time of the verdict and the argument on appeal the statute was repealed without a saving clause. Recognizing the rule stated above, this court nevertheless ordered that judgment be entered as of a time prior to the passage of the repealing statute in order to prevent a miscarriage of justice.

The case at bar presents a similar situation. Here the commission had granted to Co-Ray the variances which it sought, and on the strength of that decision Co-Ray obtained a permit from the building commissioner. But for the pendency of the present proceedings, which were brought shortly thereafter, Co-Ray would undoubtedly have gone ahead with the construction of the proposed building. The repeal now relied on by the petitioners was not enacted until several months after judgment had been entered in the court below. Only the pendency of the present appeal prevented that judgment from being final. We now hold that the appeal has no merit and that the original judgment ought to be affirmed. Justice requires that the rights secured by the decision of the commission should not be set at naught by reason of the repeal of the statute creating the commission.

The entry therefore should be that the judgment below is affirmed as of April 21, 1953, the day prior to the enactment of St. 1953, c. 284. The respondents are to have costs of appeal.

*So ordered.*