JOHN F. FORTIER *vs.* DEPARTMENT OF PUBLIC UTILITIES
& others
(and a companion case between the same parties).

Suffolk.    April 3, 1961. — June 9, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& CUTTER, JJ.

*Public Utilities. Carrier,* Bus. *State Administrative Procedure Act.*
*Words,* "Official report of the proceedings."

Where, after notice and hearing on a petition by a carrier of passengers
by bus for amendment of its certificate of public convenience and neces-
sity by extending the route covered thereby, the department of public
utilities by error ordered issuance of an original certificate covering the
extension which in the circumstances was beyond its authority and void,
it had power subsequently, without further notice or hearing, to correct
the error by substituting an order for the requested amendment of the
carrier's existing certificate as the relief which it had been "the inten-
tion of the department to grant." [731–733]
In a proceeding under G. L. c. 25, § 5, as amended through St. 1956,
c. 190, for review of a decision of the department of public utilities, the
report of a hearing officer is not required to be included in the record,
but may properly be included therein.    [733]
The words "official report of the proceedings" in G. L. c. 25, § 5, as
amended through St. 1956, c. 190, refer to the stenographic transcript.
[733]
On the record of a proceeding under G. L. c. 25, § 5; c. 30A, § 14 (8),
for review of a decision of the department of public utilities, no preju-
dice to the "substantial rights of any party" through "unlawful proce-
dure" appeared even if the decision was made without a report of the
hearing officer apart from the stenographic transcript.    [734–736]
Where a carrier of passengers by bus holding licenses and a certificate of
public convenience and necessity for a route from a city to and through
a part of a second city wished to extend such route through another
part of the second city and to a town more than twenty miles from the
first city, and had secured licenses for the extended route in the terminal
town and the one municipality between the second city and the terminal
town, but had been unable for more than three months to secure favor-
able action in the second city on an application for a license for the
extended route therein, the department of public utilities, upon proper
petition by the carrier and after notice and hearing, had power under
G. L. c. 159A, § 3, to grant the desired license in the second city subject
to the limitation set forth in § 3, and under § 7 to amend the carrier's

Fortier v. Department of Public Utilities.

certificate to cover the extension of the route to the terminal town. [736–739]

PETITIONS filed in the Supreme Judicial Court for the county of Suffolk on October 15, 1959, and November 6, 1959.

The cases were reserved and reported by *Whittemore, J.*, without decision.

*Henry G. Bowen,* for Fortier.

*Frank Daniels,* for Peter Pan Bus Lines, Inc.

*John J. Coffey,* Special Assistant Attorney General, for the Department of Public Utilities.

*Francis B. Turner,* by leave of court, submitted a brief as amicus curiae.

WHITTEMORE, J. Fortier's consolidated petitions for appeal pursuant to G. L. c. 25, § 5, challenge an order of the department of public utilities of October 13, 1959, and, if that order is invalid, an order of September 15, 1959, which was in terms rescinded by the October order. The cases were reserved and reported by a single justice without decision.

The department, by decision dated September 15, 1959, and "corrected order" of October 13, 1959, acted favorably upon the petition of Peter Pan Bus Lines, Inc. (Peter Pan), dated January 29, 1959, requesting that the department (1) amend certificate No. 3089, which authorized Peter Pan's service from Springfield to Northampton, by extension of service through Hadley to Amherst, and (2) act as licensing authority for the city of Northampton under G. L. c. 159A, § 3.[1]

The decision of September 15, 1959, recites Peter Pan's authority under local certificates to provide bus service be-

---

[1] "If a person desiring to operate any motor vehicle for the purposes and in the manner aforesaid over a route covering at least twenty miles holds a license therefor in the terminal municipalities and also a license in all but one of the intervening municipalities, or, in case seven or more municipalities intervene, in all but one or two thereof, the department . . ., on petition of such person, shall act as the licensing authority in the one or two municipalities, as the case may be, in which such person's application for such an original license has not been favorably acted upon within three months after the filing thereof. . . ."

tween Springfield and Northampton, Springfield and Boston, Springfield and Worcester, and, under authority from the Interstate Commerce Commission, Boston and points in Connecticut. It sets out that Peter Pan had lacked authority to provide the proposed service in a part of Northampton and in Hadley and Amherst, that it had obtained from Hadley and Amherst the necessary local licenses for the proposed extension of service (G. L. c. 159A, § 1), that on October 2, 1957, Peter Pan had applied to the licensing authority of Northampton, and that the application had been "laid on the table" indefinitely. The decision also found that Fortier offered local service between Amherst and Northampton; that passengers traveling to or from points beyond Northampton were obliged to transfer in that city; that the use of connecting rail service involved substantial waiting time in Springfield and Northampton; and that traveling to and from Boston and Amherst by Peter Pan and Fortier's local service also involved waiting time of an hour or more in Northampton. The concluding findings were that the revenue loss to Fortier of the proposed extension of Peter Pan's through service would be slight and that the need existed for the through service.

The distance from Springfield to Amherst is about twenty-five miles; from Northampton to Amherst it is about seven miles.

Appended to the decision of September 15, 1959, was a purported order (1) that a license be granted to Peter Pan for a route in Northampton and (2) that a certificate of public convenience and necessity be granted Peter Pan for a route starting in Northampton and ending in Amherst, provided "[t]hat when operating under authority of this certificate no passengers shall be picked up at or between Northampton and Amherst to be discharged at or between said municipalities."

Fortier appealed from the September order by petition entered in this court sitting in Suffolk County on October 15, 1959.

The "corrected order" of October 13, 1959, refers to the order of September 15 and recites that Peter Pan's petition was for amendment of existing certificate No. 3089, that it "was the intention of the department to grant this relief sought by the petitioner," and that the order by error did not so state. To correct the error and cause the order to conform to the intention of the department, the October 13 order purported to rescind the earlier order and substitute an order (1) that a license be granted to Peter Pan for the same route in Northampton described in the rescinded order and (2) that certificate No. 3089 issued January 21, 1955, be amended by adding the same route from Northampton to Amherst described in the rescinded order. The earlier proviso was included as well as the additional proviso that "no passengers shall be picked up or discharged in the city of Northampton between its present authority on Main Street, Route 9 and the Northampton-Hadley line," that is, the section of the new route licensed by the department rather than by Northampton.

Fortier duly appealed from the October 13 order. See *A. B. & C. Motor Transp. Co. Inc.* v. *Department of Pub. Util.* 327 Mass. 550; *S. C.* 329 Mass. 719, 720. Compare *Retail Stores Delivery, Inc.* v. *Department of Pub. Util.* 339 Mass. 441, 450–451.

1. Neither the order entered by error on September 15, 1959, nor any action which may have been taken thereunder vitiated the order of October 13, 1959.

The department has continuing power under G. L. c. 159A, § 7, to revise the provisions of a certificate. "The department, after notice and hearing, may revoke any such certificate for cause, and may, in like manner, revise any provisions thereof and any of the terms and conditions of such certificate or license." There had been due notice and hearing in respect of the revision of certificate No. 3089 which was ordered on October 13, 1959. The order of September 15, so far as it purported to direct that a certificate issue, was void as was any certificate purportedly issued thereunder or any other action pursuant thereto.

The proposal with which the notice and hearing were concerned was not a proposal to issue a new certificate for the route from Northampton to Amherst; the department had no power under § 3 to act as licensing authority for this route of less than twenty miles or for a terminal city. The entry of the void order had no effect on the continuing statutory power of the department to amend the certificate. This power depended primarily, not upon Peter Pan's petition, but on the department's continuing statutory supervision and control and on notice and hearing. There is no issue therefore whether a "case" begun by Peter Pan's petition had come to an irrevocable conclusion (as by a final decree in an equity suit) with concomitant end of the power of the tribunal to deal with it. The power in the department is analogous to that of an equity court in receivership proceedings where, under an appropriate reservation, jurisdiction continues and modifications may be made in an otherwise final decree. Compare (final decrees in equity) *Thompson* v. *Goulding,* 5 Allen, 81, 82; *Kingsley* v. *Fall River,* 280 Mass. 395, 398; *Commissioner of Corps. & Taxn.* v. *St. Botolph Club, Inc.* 321 Mass. 269, 272–273 (under rules of Appellate Tax Board, its practice and procedure conformed to that "prevailing in equity causes"); *Brooks* v. *National Shawmut Bank,* 323 Mass. 677, 683–684; *Enterprises, Inc.* v. *Cardinale,* 331 Mass. 244, 246–247; *Doris* v. *State Realty Co. of Boston, Inc.* 333 Mass. 425, 426. See, for revival of a suit in equity after entry of "Bill dismissed," *Donovan* v. *Danielson,* 263 Mass. 419, 424.

It is not critical therefore whether the department's action amounted to more than the correction of a clerical error — a failure to record what the tribunal intended. Such corrections may be made even in final decrees in equity. *Hyde Park Sav. Bank* v. *Davankoskas,* 298 Mass. 421, 424, and cases cited. "It is well settled that probate courts have the power to correct errors or mistakes in their own decrees . . . ." *Jones* v. *Jones,* 223 Mass. 540, 541. See *Enterprises, Inc.* v. *Cardinale,* 331 Mass. 244, 246. It is to be noted, however, that the department has recorded

that the October 13 order was to correct an error and in effect enter the order originally intended, and the circumstances are strongly confirmatory of this.

It would have been futile, unless some statute, rule, or principle required it, to issue a notice of the proposal to expunge the void order and enter the order which the statute authorized and which Peter Pan's petition and the findings of the department after due notice and hearing made appropriate and which the department intended. Nothing required this futility. It is unimportant whether the entire order of September 15 should have been rescinded, or, in view of the precise repetition of the order for the license in lieu of a local license, there was in substance only an amendment of the September order.

2. Fortier filed a "petition for appeal" in this court, which thereby entered in this court the statutory petition for appeal as filed with the department. Fortier by amendment only of the petition filed in this court assigned as error that "it does not appear that the provisions of G. L. c. 25, § 4, were complied with in that no report in writing was made to the commission for its decision thereon . . . ."[1] A motion having been made by Fortier to the single justice to introduce evidence in respect of this issue, the parties stipulated in open court that "the hearing officer held a hearing and the department thereafter received a transcript of the testimony and, except as aforesaid, there was no report by the hearing officer."

The statute does not in terms require that the report of the hearing officer be included in the record on appeal. We construe the words "official report of the proceedings,"[2] first inserted in § 5 by St. 1953, c. 575, § 1, to refer to the stenographic transcript. Any report made would nevertheless be a proper part of the record. *Norwood Ice Co.* v. *Milk Control Commn.* 338 Mass. 435, 441–442.

---

[1] General Laws c. 25, § 4, provides that such a matter as this "may be heard, examined and investigated by . . . [a designated and assigned] employee . . . [who] shall make a report in writing relative to every such matter to the commission for its decision thereon."

[2] "The record on appeal . . . [if a party so requests] shall include one copy . . . of the official report of the proceedings and of the findings of fact of the commission."

We assume that Fortier by proper specification in the original petition for appeal was entitled to show that the decision was made upon unlawful procedure. In view of the stipulation we pass the point that nothing in the petition filed with the department raised the issue. See *Attorney Gen.* v. *Department of Pub. Util., ante,* 662, 666–667.

Notwithstanding G. L. c. 25, § 5, the State Administrative Procedure Act (G. L. c. 30A) is, to a degree, also applicable. See *Newton* v. *Department of Pub. Util.* 339 Mass. 535, 542. Section 14 of c. 30A provides in part, "Where a statutory form of judicial review or appeal is provided, other than by extraordinary writ, such statutory form shall govern in all respects, except as to standards for review. The standards for review shall be those set forth in paragraph (8) of this section, except so far as statutes provide for review by trial de novo. In so far as the statutory form of judicial review or appeal is silent as to procedures provided in this section, the provisions of this section shall govern such procedures. . . . (8) The court may affirm the decision of the agency, or remand the matter for further proceedings before the agency; or the court may set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced because the agency decision is — (a) In violation of constitutional provisions; or (b) In excess of the statutory authority or jurisdiction of the agency; or (c) Based upon an error of law; or (d) Made upon unlawful procedure; or (e) Unsupported by substantial evidence; or (f) Unwarranted by facts found by the court on the record as submitted or as amplified under paragraph (7) of this section, in those instances where the court is constitutionally required to make independent findings of fact; or (g) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law. The court shall make the foregoing determinations upon consideration of the entire record, or such portions of the record as may be cited by the parties. The court shall give due weight to the experience, technical

competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.''

General Laws c. 25, § 5, contemplates that the hearing officer and the commission will consider and weigh the evidence. *Malden* v. *Metropolitan Transit Authy.* 328 Mass. 491, 494. We assume that the officer and the commission, at least in some cases, follow a practice exemplified in the *Malden* case and which, as that case impliedly holds, meets the requirements of the statute for a report by the hearing officer and a decision by the commission.[1] The original papers in that case show that on the same day on which the examiner filed a draft decision the commission entered its decision in the same form except for minor changes. We question whether the stipulation in the present cases was intended to foreclose the possibility that the decision was drafted by the hearing officer and adopted by the commission without change. The decision is obviously drafted by someone who heard or read the evidence and the stenographic transcript in the record before us is stamped as received in the department January 14, 1960, whereas the decision, as stated, was entered in September, 1959.

But if there was an omission of the prescribed step of a report, it is plain that no ''substantial rights of any party . . . have been prejudiced'' (G. L. c. 30A, § 14 [8]). No issue of fact depended upon the credibility of witnesses. Fortier does not contend that the decision is ''[u]nsupported by substantial evidence.'' Whatever may be the result where such is the issue (see *Norwood Ice Co.* v. *Milk Control Commn.* 338 Mass. 435, 441, citing *Universal Camera Corp.* v. *National Labor Relations Bd.* 340 U. S. 474, 493), we discern no prejudice here. The assurance of c. 25, § 5, to the parties is a limited one in view of G. L. c. 30A, § 11 (7), discussed below. Chapter 25, § 5, assures that the decision will be by the *commission,* with the case so presented that the commission can consider and weigh the evidence. The transcript would serve so to present these

---

[1] Good practice, we think, calls for a report by the hearing officer, designated as such and differentiated from the decision of the commission.

cases. Its transmission and acceptance, without more, would imply the judgment of the hearing officer on his weighing of the evidence, and of the commission, that the cases were suitably presented to the commission on the transcript. Fortier on these issues may not require more. It is conjectural that the hearing officer might have concluded differently from the commission. The right of parties to participate after the drafting of a tentative or proposed decision is expressed in G. L. c. 30A, § 11 (7).[1] No specification of error asserts noncompliance with the requirements of this subsection. The department may have adopted a regulation in accordance therewith,[2] and Fortier for all we know or need assume may have waived his rights thereunder. In the circumstances we see no basis for contending that there was a lack of procedural due process, adverted to in Fortier's brief as a possibility but not argued. See Vom Baur, Federal Administrative Law, § 298.

3. So much of the order of October 13, 1959, as constituted a local license was within the department's power under G. L. c. 159A, § 3. Peter Pan was, within the description of § 3, "a person desiring to operate any motor vehicle for the purposes and in the manner aforesaid over a route covering at least twenty miles [who] holds a license therefor in the terminal municipalities and also a license in all but one of the intervening municipalities . . .." There is nothing in Fortier's contention, joined in by several

---

[1] General Laws, c. 30A, § 11 (7), provides: "If a majority of the officials of the agency who are to render the final decision have neither heard nor read the evidence, such decision, if adverse to any party other than the agency, shall be made only after (a) a tentative or proposed decision is delivered or mailed to the parties containing a statement of reasons and including determination of each issue of fact or law necessary to the tentative or proposed decision; and (b) an opportunity is afforded each party adversely affected to file objections and to present argument, either orally or in writing as the agency may order, to a majority of the officials who are to render the final decision. The agency may by regulation provide that, unless parties make written request in advance for the tentative or proposed decision, the agency shall not be bound to comply with the procedures of this paragraph."

[2] The joint brief of the department and Peter Pan asserts that the department has made such a regulation and sets it out in an appendix with the date of its adoption, but we do not notice such action. *Passanessi* v. *C. J. Maney Co. Inc.* 340 Mass. 599, 604.

amici curiae, that Peter Pan's licenses which underlay un-amended certificate No. 3089 were not licenses issued in contemplation of a through route from Springfield to Amherst and hence were not "license[s] *therefor*" (emphasis supplied). A local "license therefor" is a license to traverse those ways in the municipality which form a part of the desired route. Such licenses issue under c. 159A, § 1. "No person shall, except as otherwise provided in this chapter, operate any motor vehicle upon any public way in any city or town for the carriage of passengers for hire . . . without first obtaining a license for such operation . . . . Any person . . . [so licensed] shall, in respect to such operation, be subject to such orders, rules or regulations as shall be adopted by the licensing authority under this chapter. . . ." (Section 12 authorizes such rules, etc., subject to change by the department.) Section 2 requires the local licenses to specify the route or routes over which the motor vehicles may be operated. It does not appear therefore that local licenses are issued with reference to destinations outside the municipality to and from which the vehicles may be proceeding when traversing the licensed route within the municipality.

If Fortier's construction were correct, Peter Pan on a trip starting in Northampton under certificate No. 3089 could proceed beyond Springfield only if the licenses underlying its Springfield to Boston certificate had been issued in contemplation of the use of local ways by buses coming from beyond Springfield. Also, if Peter Pan had obtained a local license from Northampton and had applied for and obtained a certificate for a new route from Northampton to Amherst, as, we take it, Fortier contends it should have done, it would have been able to operate Boston to Northampton buses, or Springfield to Northampton buses, over the extended route only by reapplying in all municipalities traversed by the entire route with mention of the extended portion of the route so that each license would be a license "therefor."

The duration of the local licenses is fixed by § 4. "Each

license . . . for operations as to which . . . a certificate [of convenience and necessity under § 7] . . . is obtained within three years thereafter . . . shall remain in force and effect as to the routes and for the number of vehicles specified in such license or operated thereunder . . . until revoked as hereinafter provided. After public notice and hearing, the licensing authority may, for good and sufficient reasons to be stated in the order of revocation, revoke in whole or in part such a license issued by such authority, but unless within thirty days after any such order of revocation, except an order made by the department or by the metropolitan district commission acting as such licensing authority, the licensee consents thereto in writing, such order shall not be valid until approved by the department after public notice and hearing." Thus it is plain that Peter Pan's pre-1959 local licenses were in effect for "the routes . . . [in the respective municipalities] specified in [each] such license."

Section 3 authorized the department to issue the license for Northampton as Peter Pan's application had "not been favorably acted upon within three months after the filing thereof." The only requirements of the section beyond those already mentioned are public hearing after notice to the licensing authority and that "operation under such a license shall be limited to through traffic without stopping in such municipality for taking on or discharging passeners . . . ." The findings show the inaction of Northampton for over three months. The license contained an appropriate limitation under the statute. The outstanding license in Northampton for part of the necessary route does not make § 3 inoperative. Peter Pan had been unable to get a local license for all the route through Northampton. It therefore did not have the local license needed to enable it to operate the intercity route, and hence in Northampton it lacked the local "license therefor."

4. The amendment in the order of October 13, 1959, was a valid exercise of the power of the department. Section 7 provides, "No person shall operate a motor vehicle under a

license issued as aforesaid unless he has also obtained from the department a certificate declaring that public convenience and necessity require such operation. The department may, after public hearing, issue or refuse to issue such a certificate . . . . The department, after notice and hearing, may . . . revise . . . [the certificate, its terms and conditions].'' It is unimportant in this case that the application was to amend an existing certificate. All the conditions and requirements had been met to permit the department to issue a certificate for the twenty-five mile route from Springfield to Amherst. There were unrevoked local licenses for each municipality save one, and the department issued a license for that one. Notice had been given and a hearing held. The power was properly exercised by amending the existing certificate rather than issuing another overlapping certificate. There is nothing in the suggestion that, by the device of successive amendments, the department could issue more licenses in lieu of local licenses than § 3 permits, and thus amend a certificate notwithstanding the absence of more than one local license, or more than two, where more than seven municipalities intervene between termini. ''The law looks at the substance of the thing done.'' *Boston & Maine R.R.* v. *Cate,* 254 Mass. 248, 250. Whenever the power under § 3 is exercised, the full route for which the certificate is to be issued or amended must be considered and the licenses in ''intervening municipalities'' which must be had to permit the department to act will mean locally issued licenses. If Peter Pan, for example, sought to have its amended certificate again amended to extend to Greenfield, thus encompassing more than seven municipalities between termini (Springfield and Greenfield), the department could issue a license in lieu of a local license for only one more municipality.

5. The appeal from the rescinded order of September 15, 1959, is dismissed as moot. No error is shown in the order of October 13, 1959, and it is accordingly affirmed.

*So ordered.*