ALMEIDA BUS LINES, INC. *vs.* DEPARTMENT OF PUBLIC UTILITIES & another.

Suffolk. November 4, 1964. — January 7, 1965.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & SPIEGEL, JJ.

*Public Utilities. Carrier, Bus. Administrative Board or Officer. Nunc Pro Tunc. State Administrative Procedure Act. Equity Jurisdiction, Review of decision of department of public utilities.*

Under G. L. c. 159A, §§ 1, 4, a prerequisite to the issuance of a valid certificate of public convenience and necessity by the Department of Public Utilities to a carrier of passengers by motor bus is possession by the carrier of local licenses issued within three years previously. [336–337]

Administrative agencies have the power to enter decisions and orders nunc pro tunc in appropriate instances. [338–339]

Where a carrier of passengers by motor bus holding local licenses applied to the Department of Public Utilities for a certificate of public convenience and necessity more than four months before the expiration of the licenses under G. L. c. 159A, § 4, and the department held hearings on the application before their expiration but did not render a decision granting the certificate until several months after their expiration, there was an appropriate case for issuance of the certificate nunc pro tunc as of a date prior to their expiration in order to avoid injustice to the carrier through the lapse of time required to enable the department to make its decision. [339–340]

After the Department of Public Utilities, upon due notice and hearing, had made a decision to issue a certificate of public convenience and necessity to a carrier of passengers by motor bus, the department was not required to give further notice or afford further hearing before making a later order, appropriate in the circumstances, that the certificate be issued nunc pro tunc as of a specified prior date. [340–341]

A decision by the Department of Public Utilities, granting a certificate of public convenience and necessity to a carrier of passengers by motor bus to extend a route between Boston and an existing terminal point to a new terminal point between which and Boston another carrier was

already providing service by a route different from the applicant's route, was, within G. L. c. 30A, § 14 (8), supported by "substantial evidence" respecting inadequacy of existing service, demand for the service proposed by the applicant, improvement of service thereby, and other factors, and could not be said to be "arbitrary or capricious . . . [or] an abuse of discretion" even if in granting the certificate the department, for reasons of public interest set forth in its decision, was departing from its established policy "to protect an existing carrier in a franchised area from encroachment by other carriers." [341–344]

PETITIONS filed in the Supreme Judicial Court for the county of Suffolk on June 16, 1961.

Following allowance of a motion by the petitioner to consolidate, the case was reserved and reported by *Spiegel, J.*

*Frank Daniels* (*Philip A. Wharton* with him) for Almeida Bus Lines, Inc.

*William Minot* for Plymouth and Brockton Street Railway Company.

*Carter Lee,* Assistant Attorney General, for the Department of Public Utilities.

SPIEGEL, J. This is a consolidated appeal by Almeida Bus Lines, Inc. (Almeida), under G. L. c. 25, § 5, as amended through St. 1956, c. 190, from two orders of the department. The first order, dated May 19, 1961, granted a certificate of public convenience and necessity to the Plymouth and Brockton Street Railway Company (P and B). The second order, dated June 7, 1961, directed that the certificate "bear a date as of February 1, 1961." The single justice reserved and reported the case without decision.

On September 28, 1960, P and B filed a petition for a certificate of public convenience and necessity for the operation of passenger buses through Barnstable, Sandwich, and Bourne. P and B had obtained licenses from these towns on February 17, 19, and 21, 1958, and had filed them with the department. On December 12, 1960, and January 6, 1961, after due notice to all parties, the department held public hearings on P and B's petition, which Almeida opposed. On January 4, 1961, Almeida, the appellant in the instant case concerning P and B's petition, applied for a certificate of public convenience and necessity to operate

passenger buses for hire over certain public ways in Bourne, Plymouth, Kingston, and other towns. On March 16, 1961, the department held a public hearing on that petition, which P and B opposed. At the start of the Almeida hearing, both parties agreed that the record of P and B's hearing be incorporated in the record of Almeida's hearing.

On May 19, 1961, the department issued a decision and order in both cases, granting the certificates for which the parties respectively petitioned. The decision in P and B's case (D. P. U. 13419) recites that P and B operates routes between Boston and Sagamore traffic circle via Plymouth, Kingston, Duxbury, Pembroke, Hanover, Norwell, and Hingham; and that it operates other routes from Marshfield to Boston, from Greenbush to Boston and from Plymouth to Brockton. It sets out that P and B's petition seeks to extend the Boston-Sagamore route southeast to Hyannis, thereby providing service between Hyannis and Boston, as well as between Hyannis and points between Sagamore and Boston. It further indicates that P and B agreed not to pick up or discharge passengers on Route 6; that local licenses have been received by P and B from the towns of Barnstable, Sandwich, and Bourne; that there is service between Hyannis and Providence via Sagamore traffic circle where passengers can transfer to P and B buses; that Almeida provides service between Hyannis and Boston via Milton, Stoughton, West Bridgewater, Middleboro, Wareham, and Buzzards Bay; that no service exists, however, between Hyannis and points between Sagamore traffic circle and Boston; that P and B proposes to operate two or three trips a day, and perhaps double that number during summer months; that rates would be roughly double the current fare between Plymouth and Boston; that an unlimited ten-ride ticket would cost about $24.50; and that the trip would take about two hours. It also recites that "[s]ubject to the imposition of a 'closed door' restriction on Route 6, The Short Line Bus Company did not object to the granting of the petition," but that Almeida "did object, contending that the granting of the petition would place . . . [P and B] in direct competition with it for Cape traffic."

The remainder of the decision and order states as follows: "Travelling a Short Line bus to Sagamore circle and then transferring to a bus of the Company for Boston and the return trip in this manner, are wholly unsatisfactory methods of travel at the present time. Because the buses are infrequent, a delay of one of the buses can cause passengers intending to transfer to lose the connecting bus, in which case the passenger must wait for several hours. These circumstances discourage patronage.

"It is correct that there is service between Hyannis and Boston via Middleboro but the record is persuasive that this service does not satisfy the public convenience and necessity. It is the practice, wherever possible, to preserve the territory of a carrier without hurtful competition from other carriers. In this case we are convinced that our action in granting this petition is in the public interest and not a contravention of the spirit of our usual practice under ordinary and normal conditions. At the present time many people drive their automobiles to Sagamore circle or to Kingston from Hyannis and there board Company buses, rather than use the Almeida Bus Line Service. This is, no doubt, partly due to the directness of the route, but it is also in large part due to the reliable, comfortable service provided by the Company. This service is superior to the service which the record demonstrates has been provided by Almeida. The public is entitled to the best service available.

"Moreover, there was a substantial amount of evidence indicating a demand for service between Hyannis and the environs of Plymouth, which is not provided over routes of the Almeida Bus Lines.

"Conditions have changed very substantially since this question was last before the Department. At that time the New Haven [Railroad] was providing regular service between Boston and the Cape area. This service has been discontinued, resulting in a serious curtailment of public transportation to the Cape area. We believe that rapid, comfortable and adequate bus service between Boston, Plym-

outh and the Cape is of great importance to the public, not only those people actually using the service but those who are interested in the substantial summer tourist business located on the Cape. We, therefore, find that public convenience and necessity requires [*sic*] the granting of the petition.

"Accordingly . . . it is ORDERED: That the Plymouth and Brockton Street Railway Company be granted a certificate of public convenience and necessity for the operation of motor vehicles for the carriage of passengers for hire over the following described routes: BARNSTABLE In Hyannis on Main Street to Centre Street; on Centre Street between Main Street and Barnstable Road; on Barnstable Road between Centre Street and the rotary traffic circle at the junction of Route[s] 28 and 132; around the said traffic circle; on Iyannough Road (Route 132) between the said traffic circle and the traffic circle and the junction of U. S. Route 6 and Route 132; around the said traffic circle; on U. S. Route 6 to the Barnstable-Sandwich Town Line. SANDWICH On U. S. Route 6 between the Barnstable Town Line and the Bourne Town Line. BOURNE On U. S. Route 6 between the Sandwich-Bourne Town Line and the rotary traffic circle at the intersection of U. S. Route 6 and Massachusetts Route 3A; and around said traffic circle, to Plymouth line. Provided, however, that no passengers shall be picked up or discharged on U. S. Route 6; and it is further ORDERED: That the Department's investigation in D. P. U. 13419 be and the same is hereby terminated and closed."[1]

---

[1] Commissioners Begley and Cleary, dissenting: "We have dissented from the opinion of the majority for the reason that it has been the long established policy of this Department to protect an existing carrier in a franchised area from encroachment by other carriers. In D. P. U. 12955, petition of *Hyannis Scenic Tours, Inc.* dated August 11, 1955, we stated: 'It has always been the policy of this Department to protect the operations of established regular route common carriers insofar as possible and in the instant proceedings we do not believe we would be justified in granting authority to another carrier to perform operations which would have an adverse effect upon the revenues and operators of the regular route common carrier in the area.'

"We are of the opinion that no justification exists in this case to grant authority to Plymouth and Brockton Street Railway to service the area between Sagamore and Hyannis since an existing carrier namely, Almeida Bus Lines, Inc. provides almost similar service. To grant the petition would mean

On June 7, 1961, the department issued an order, relating to P and B's petition, reading in part as follows: "It appearing that the failure to issue a certificate of public convenience and necessity, nunc pro tunc, may result in a failure of justice, it is VOTED: In order to prevent a failure of justice, the Director of the Railway and Bus Division of the Department is hereby directed to issue a certificate of public convenience and necessity in accordance with the vote of this Commission of May 19, 1961, said certificate to bear a date as of February 1, 1961."[2]

The parties have stipulated that the certificate of public convenience and necessity issued to P and B in this case (D. P. U. No. 13419) is the only one ever granted "in consequence of the use of the local licenses issued by the Town of Barnstable on February 19, 1958, Town of Sandwich on February 21, 1958, and Town of Bourne on February 17, 1958."

1. Almeida first contends that the department had no authority to issue a certificate to P and B because the local licenses upon which the certificate was based had expired before the date of issuance. In this connection, it argues that G. L. c. 159A, § 4, specifically limits the duration of the licenses to three years and cannot be circumvented by the granting of a certificate nunc pro tunc.

General Laws c. 159A, § 1, requires that persons "transporting passengers for hire as a business between fixed and regular termini" by "motor vehicle upon any public way

that Plymouth & Brockton Street Railway would have authority to carry passengers from Boston to Hyannis and Hyannis to Boston, which authority would place it in direct competition with Almeida Bus Lines, Inc. The evidence indicates that there is only limited demand for through service between these terminals; and to have two authorized carriers competing for this limited business would necessarily affect the revenues and operations of the existing carrier adversely with the probable result of increased fares and inferior service to the public.

"We are of the opinion that the long standing policy of this Department is as sound now as when originally advocated. Any departure from this policy would tend to contravene the intent of legislation passed for the protection of existing carriers."

[2] The certificate issued P and B states, inter alia: "In accordance with the vote of the Commission of the Department of Public Utilities, dated June 7, 1961 (D. P. U. 13419–A), this certificate shall be deemed to have been issued on February 1, 1961."

in any city or town" must first obtain "a license for such operation from the city council of such city or the selectmen of such town, in this chapter called the licensing authority." Under G. L. c. 159A, § 4, as amended by St. 1945, c. 318, § 1, a local license expires at the end of three years unless a "certificate of public convenience and necessity under section seven is obtained within three years after the date when such license is issued by the licensing authority . . . ." Thus, possession of a valid local license, i.e., one that has been issued within three years, is a prerequisite to the issuance of a valid certificate. See Rep. D. P. U. Pub. Doc. No. 14, 1925, p. 4.

In the case at hand, the licenses from the towns of Barnstable, Sandwich, and Bourne were issued to P and B on February 17, 19, and 21, 1958; whereas the certificate from the department was issued *in fact* on May 19, 1961, more than three years later, although the order nunc pro tunc of June 7, 1961, assigns the date of February 1, 1961, as the date of issuance. The question, then, is whether G. L. c. 159A, § 4, by referring to a "certificate . . . obtained within three years after the date" when a license is issued, requires us to look only to the actual date of issuance of the certificate to determine its validity, or whether the department can use the device of an order nunc pro tunc to set an earlier date.

The Supreme Judicial and the Superior courts have statutory power to issue judgments, orders, and decrees nunc pro tunc. G. L. c. 235, § 4. The statute is declaratory of the common law. *Perry* v. *Wilson,* 7 Mass. 394, 395. *Springfield* v. *Worcester,* 2 Cush. 52, 62. *Kelley* v. *Riley,* 106 Mass. 339, 341. *Agawam* v. *County of Hampden,* 130 Mass. 528, 539. Freeman, Judgments (5th ed.) § 121. "The function of a nunc pro tunc order in general is to put upon the record and to render efficacious some finding, direction or adjudication of the court made actually or inferentially at an earlier time, which by accident, mistake or oversight was not made matter of record, or to validate some proceeding actually taken but by oversight or mistake

not authorized, or to prevent a failure of justice resulting, directly or indirectly from delay in court proceedings subsequent to a time when a judgment, order or decree ought to and would have been entered, save that the cause was pending under advisement." *Perkins* v. *Perkins,* 225 Mass. 392, 396. Thus, where the defendant dies after a judge has reserved his decision, judgment may be entered as of the former term. *Perry* v. *Wilson,* 7 Mass. 393, 394. And where a six months period of limitation expires before decision, "[t]he application having been made by the petitioners and entertained by the court within the six months," the court has power "to prevent it from being defeated by the lapse of time necessary for its judicial consideration, and to order judgment to be entered as of the day when the case was heard and reserved for . . . determination." *Agawam* v. *County of Hampden,* 130 Mass. 528, 539. Similarly, a nunc pro tunc order for judgment on a verdict may properly be entered in order to prevent a miscarriage of justice where a statute on which liability is founded has been repealed after the verdict. *Springfield* v. *Worcester,* 2 Cush. 52, 61–62. *Finnegan* v. *Checker Taxi Co.* 300 Mass. 62, 66–67. See *Miller* v. *Emergency Housing Commn.* 330 Mass. 693, 699–700; *Application of Martini,* 184 F. Supp. 395, 400–402; *Jewett* v. *Schmidt,* 108 App. Div. (N. Y.) 322, 325–326. Thus, in all these cases, through delay due to the necessity for judicial deliberation, the power of the court to adjudicate a matter submitted to it would be defeated if an entry nunc pro tunc could not be made. The delay of the court in this regard should not prejudice the parties. See cases collected in annotations, 3 A. L. R. 1403, 68 A. L. R. 261; Freeman, Judgments (5th ed.) §§ 121, 122.

The cases in Massachusetts do not involve the question of the power of administrative agencies to enter decisions and orders nunc pro tunc. In other jurisdictions where the question has arisen, the rules relating to nunc pro tunc orders generally apply to administrative agencies and quasi-judicial commissions. *Ricketts* v. *Hiawatha Oil & Gas Co.* 300 Ky. 548, 554–555. *In re Application of Andrews,* 175

Neb. 222, 230. *Helle* v. *Public Util. Commn. of Ohio,* 118 Ohio St. 434, 439. *Railroad Commn. of Texas* v. *McClain,* 356 S. W. 2d 330, 334 (Tex. Civ. App.). We see no reason to restrict to the courts the power to enter nunc pro tunc orders in appropriate cases. Under G. L. c. 30A, § 11, administrative agencies are required to hear parties, consider evidence and make records available in much the same manner as do courts. They are required to render decisions in each proceeding "accompanied by a statement of reasons . . . including determination of each issue of fact or law." G. L. c. 30A, § 11 (8). Such decisions, like those of courts, entail prior deliberations. Thus, we think the policy underlying the use of the nunc pro tunc entry (that delays caused by a tribunal's taking the case under advisement should not prejudice the parties) should apply as well to administrative agencies. "Where a grant of power is expressly conferred by statute upon an administrative officer or board or where a specific duty is imposed upon them, they in the absence of some statutory limitation have authority to employ all ordinary means reasonably necessary for the full exercise of the power and for the faithful performance of the duty." *Bureau of Old Age Assistance of Natick* v. *Commissioner of Pub. Welfare,* 326 Mass. 121, 124.

The hearing before the department on P and B's petition was closed on January 6, 1961. The record in the P and B case was incorporated in the proceedings of the Almeida case on March 16, 1961; but the cases were kept separate and distinct. P and B made a timely application for its certificate. It presented its case more than two months before the expiration of the licenses issued in February, 1958. The last hearing on January 6, 1961, ended more than a month before such expiration. When the department closed the case and deliberated on the merits of the petition, P and B could take no further action. It could only wait for a decision. It would be unfair to deny P and B a certificate simply because of the lapse of time required to enable the department to render a considered decision. The injustice could be corrected by entering the date of the certificate

nunc pro tunc as of February 1, 1961, at which time the certificate could have been validly issued. We hold that the department had power to issue to P and B a certificate nunc pro tunc.

2. Almeida further contends that the order of June 7, 1961, was invalid because the department failed to give Almeida adequate notice and opportunity to be heard regarding that order. Almeida's brief embarks on an examination of the State Administrative Procedure Act, G. L. c. 30A, in an attempt to support its position on adequate notice in "adjudicatory proceedings." There is, however, a simpler approach which shows its contention to be without merit.

In *Fortier* v. *Department of Pub. Util.* 342 Mass. 728, a carrier of passengers by bus petitioned the department for an *amendment* of its certificate by extending the route covered thereby. After notice and hearing on the petition, the department by error ordered issuance of an *original* certificate including the extension which in the circumstances was beyond its authority and void. This court held that the department had power subsequently, without further notice or hearing, to correct the error by substituting an order for the requested amendment of the carrier's existing certificate. "The entry of the void order had no effect on the continuing statutory power of the department to amend the certificate. This power depended primarily, not upon . . . [the] petition, but on the department's continuing statutory supervision and control and on notice and hearing. There is no issue therefore whether a 'case' begun by . . . [the] petition had come to an irrevocable conclusion (as by a final decree in an equity suit) with concomitant end of the power of the tribunal to deal with it. The power in the department is analogous to that of an equity court in receivership proceedings where, under an appropriate reservation, jurisdiction continues and modifications may be made in an otherwise final decree." *Id.* at 732.

In the instant case, it has already been established that the department had the power to enter a decision and order

nunc pro tunc. Between the time of the May 19 order and that of the June 7 nunc pro tunc order, no new matter arose. Notice and hearing had already been afforded with respect to P and B's petition. The June 7 order was based on the same facts established in the hearings as was the May 19 order. "It would have been futile, unless some statute, rule, or principle required it," to give notice of the proposal to amend the order issuing a void certificate and to issue the valid nunc pro tunc certificate which the department had power to grant and which P and B's petition and the findings of the department after the notice and hearing may well have made appropriate. "Nothing required this futility." *Fortier* v. *Department of Pub. Util.* 342 Mass. 728, 733.

3. Almeida's final contention is that the department's findings were not supported by substantial evidence indicating that the public convenience and necessity required a granting of P and B's petition. In this connection, it argues that there was no substantial demand for the service proposed by P and B; and further, that, inasmuch as existing carriers provide adequately for the public convenience and necessity, the department has erroneously "departed from its established policy to protect an existing carrier in a franchised area from encroachment by other carriers." It thus asserts that the department's decision is "arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the law." See G. L. c. 30A, § 14 (8) (g). We do not agree.

"One of the duties of judicial review is to determine 'upon consideration of the entire record' whether substantial rights have been prejudiced because the agency decision was 'unsupported by substantial evidence.' G. L. c. 30A, § 14 (8)." *Salisbury Water Supply Co.* v. *Department of Pub. Util.* 344 Mass. 716, 718. *Bay State Harness Horse Racing & Breeding Assn. Inc.* v. *State Racing Comm.* 342 Mass. 694, 701. " 'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6). *Singer Sew-*

*ing Mach. Co.* v. *Assessors of Boston,* 341 Mass. 513, 517. *Salisbury Water Supply Co.* v. *Department of Pub. Util.* 344 Mass. 716, 718. The findings of the department must be sustained if justified by substantial evidence, *Wilmington* v. *Department of Pub. Util.* 341 Mass. 599, 605, and "the burden is on the appealing party to show that the department's decision was invalid." *Wilmington* v. *Department of Pub. Util., supra,* at 606. See G. L. c. 25, § 5, as amended through St. 1956, c. 190. In considering this question, "[t]he court shall give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14 (8) (g). See *Hamilton* v. *Department of Pub. Util.* 346 Mass. 130, 137–138.

In the case at bar, we think that the department's findings are supported by "substantial evidence." Concerning public demand and need for the proposed service, there is evidence that the "New Haven" Railroad is no longer serving the area; that the population in southeastern Massachusetts is increasing; that Almeida does not serve the area between Plymouth and Boston; that the only way that passengers living between Boston and Plymouth can reach Hyannis by bus without a change to The Short Line would be via the service proposed by P and B; that the infrequent connections at Sagamore traffic circle cause great loss of time and inconvenience to passengers who must now transfer; that many people and organizations requested direct service from Hyannis to Plymouth and Boston; that under present circumstances fourteen to sixteen passengers of P and B drive daily by car from Barnstable or Hyannis to Kingston or Sagamore to ride P and B's buses to Boston; and that P and B contemplates two or three trips a day over its proposed route, and double that number in summer. We think that this evidence substantially supports the department's finding that existing carriers do not provide adequately for the public convenience and necessity.

There is further evidence that P and B offers superior service; that P and B operates several routes in the Boston-

Plymouth-Brockton area; that its Plymouth-Sagamore line has been in operation since 1960; that P. and B's proposed route from Hyannis to Sagamore differs from that used by Almeida; that P and B proposes to provide service to Plymouth and vicinity whereas Almeida does not; that Almeida has applied for a second route from Hyannis to Boston; that it will operate both routes; and that there are enough patrons for both of them. Such evidence in conjunction with the evidence already recited substantially supports the department's finding that the "public convenience and necessity . . . [require] the granting of . . . [P and B's] petition." There is, of course, evidence which tends to contradict the finding of the department. This includes evidence that if P and B's petition were granted, Almeida would go out of business. But the department was not required to believe any of this testimony. *Northeastern Malden Barrel Co. Inc.* v. *Binder,* 341 Mass. 710, 712.

It is true that the grant of a certificate to P and B creates a situation in which both carriers have authority to operate between Boston and Hyannis. Indeed, the concurrent grant of Almeida's petition for an additional line now establishes three separate routes between these same points. Although each route serves intermediate towns different from those served by the other routes, nevertheless some competition might arise for the patronage from Hyannis to Boston and from Boston to Hyannis. However, in view of the findings that existing service between these points is inadequate, and that the proposed service by P and B is required by the public convenience and necessity, we cannot say as a matter of law that the existence of such competition is so incompatible with the public convenience and necessity as to render the department's decision "arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the law." See *Santee* v. *Brady,* 209 Ark. 224, 231–233; *Coast Cities Coaches, Inc.* v. *Florida R.R. & Pub. Util. Commn.* 139 So. 2d 674, 677 (Fla.); *Bartonville Bus Lines* v. *Eagle Motor Coach Line,* 326 Ill. 200, 202–203; *North Carolina ex rel. Utilities Commn.* v. *Ray,* 236 N. C.

692, 696; Auerbach, The Regulation of Motor Carriers in Wisconsin, 1951 Wis. L. Rev. 5, 27.   Cf. *Schaffer Transp. Co.* v. *United States,* 355 U. S. 83, 91.   See generally, Schwartz, Legal Restriction of Competition in the Regulated Industries: An Abdication of Judicial Responsibility, 67 Harv. L. Rev. 436, 439–441.   In determining whether the public convenience and necessity will be satisfied, the department could consider a broad range of factors.   See *Roberto* v. *Department of Pub. Util.* 262 Mass. 583, 587; *Newton* v. *Department of Pub. Util.* 339 Mass. 535, 546–547. It ''could exercise a wide range of discretion in appraising the public interest and adopting reasonable policies, principles, and standards for its guidance.   It could apply such principles where the action was justified by substantial evidence, and could determine what weight should be given to the various relevant considerations.''   *Holyoke St. Ry.* v. *Department of Pub. Util.* 347 Mass. 440, 450.   Cf. *New York Cent. R.R.* v. *Department of Pub. Util.* 347 Mass. 586, 592–593.   If the department has departed from its established policy to protect an existing carrier in a franchised area from encroachment by other carriers, it was free to do so after due consideration of the public interest.   *Holyoke St. Ry.* v. *Department of Pub. Util.* 347 Mass. 440, 450.   The department has carefully set forth the reasons for its orders and decision and we are of opinion that Almeida has not sustained its burden of proving that the decision was invalid.

4.   A final decree is to be entered affirming the orders.

*So ordered.*