CITY OF WORCESTER vs. DEPARTMENT OF PUBLIC UTILITIES. March 5, 1984. *Public Utilities*, License. *Carrier*, Bus. *Municipal Corporations*, Police power, Licensing board.

The city of Worcester appealed to the county court under G. L. c. 25, § 5, from a decision of the Department of Public Utilities (DPU) to grant Peter Pan Bus Lines, Inc. (Peter Pan), a license to operate its buses over a certain route in Worcester. A single justice affirmed the DPU's decision, and Worcester appealed. We affirm the judgment.

General Laws c. 159A, § 1, as amended through St. 1981, c. 351, § 93, provides that no person may operate a bus service for hire over the public ways of a city or town without first obtaining a license from that municipality. It further provides that if the license is not granted the applicant may appeal to the DPU, and if the commission of the DPU[1] disapproves of the municipality's action the commission "shall act as a licensing authority and may issue a license which shall specify the route or routes" over which the buses may be operated. Peter Pan applied to the licensing board of Worcester under G. L. c. 159A, § 1, for a license to operate its buses on specified streets in Worcester. That application was denied and Peter Pan appealed to the DPU, which, by its commission, conducted a public hearing and then issued the requested license.

At the hearing conducted by the commission there was evidence that Peter Pan had operated regular bus service in and out of Worcester for nearly fifty years and that it wished to expand its Worcester services beyond regular route service to charter and motor coach service. In order to accomplish this, Peter Pan required a ticket office, which was unavailable at the terminal which the company had been using, but was available at a new location. A new route was required for access to the new location. There was also evidence that between late June, 1982, and the end of August, 1982, while Peter Pan was operating out of its new location pursuant to a 120-day license issued to it by the DPU under G. L. c. 159A, § 5, approximately 1,300 people had purchased tickets from Peter Pan and approximately 5,000 passengers were transported by Peter Pan to or from that terminal. A company spokesman testified that if the license were denied Peter Pan would discontinue its regular route service. A witness representing Worcester testified before the commission that facilities for parking buses at the proposed location were inadequate, and that, if the license were to be issued, safety hazards and economic harm to a business abutting Peter Pan's proposed terminal would result. The commission granted Peter Pan the license it sought, concluding that "the petitioner [had] shown public convenience and necessity" for the license.[2]

---

[1] General Laws c. 25, § 2, provides that the DPU shall be under the supervision and control of a three-member commission.

[2] General Laws c. 159A, § 1, provides for the issuance of licenses for motor vehicle passenger carriers for hire. General Laws c. 159A, § 7, provides for the issuance of certificates of public convenience and necessity. Both a license and a certificate

Worcester argues that the DPU was required to defer to the judgment of the city's licensing board because the board's decision was based on substantial evidence, that Worcester's police power superseded the power of the DPU with respect to determining bus routes, and that the commission's decision that public convenience and necessity required issuance of the license was not supported by substantial evidence. The first contention ignores the plain language of G. L. c. 159A, § 1, that "if the commission disapproves of [the local licensing board's] action, it shall act as a licensing authority and may issue a license." There is no suggestion in that statute that the commission's function is to review decisions of local licensing boards. The Legislature has established the DPU as the paramount authority with respect to licensing routes of motor vehicle passenger carriers for hire.

Worcester's contention that its municipal police power to regulate the use of its public ways supersedes the power of the DPU wholly ignores the Legislature's power to act in relation to cities and towns as provided by §§ 6 and 8 of the Home Rule Amendment, art. 2 of the Amendments to the Constitution of the Commonwealth, as appearing in art. 89 of the Amendments. A city does not have ultimate licensing power over routes for motor vehicle passenger carriers for hire because the Legislature has given that power to the DPU.

Worcester's argument that there was not substantial evidence to support the DPU's conclusion that public convenience and necessity required the issuance of the license has no merit. "Substantial evidence" is defined in G. L. c. 30A, § 1 (6), inserted by St. 1954, c. 681, § 1, as "such evidence as a reasonable mind might accept as adequate to support a conclusion." See *New Boston Garden Corp.* v. *Assessors of Boston,* 383 Mass. 456, 466 (1981); *Almeida Bus Lines* v. *Department of Pub. Utils.,* 348 Mass. 331, 341 (1965). The evidence was clearly sufficient to support the conclusion that public convenience and necessity required issuance of the contested license.

*Judgment affirmed.*

*Malcolm L. Burdine,* Assistant City Solicitor, for the plaintiff.
*Jamie W. Katz,* Assistant Attorney General, for the defendant.

---

of public convenience and necessity are required for legal operation of motor vehicle passenger carriers for hire over the public ways of a city or town. Section 7 expressly states that the DPU should apply a public convenience and necessity test in determining whether it should issue a certificate. Section 1 does not expressly provide what must be shown for the issuance of a license. Apparently, since the statute requires a showing of public convenience and necessity for a certificate, the DPU requires the same showing when it grants a license. This is a reasonable practice, and the parties raise no issue in this regard.