DEACON TRANSPORTATION, INC. *vs.* DEPARTMENT OF PUBLIC
UTILITIES.

Suffolk. November 5, 1982. — March 10, 1983.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Motor Vehicle,* Sight-seeing bus. *Public Utilities,* Sight-seeing bus. *Carrier,* Sight-seeing bus.

At a hearing on a petition filed with the Department of Public Utilities for
a certificate of public convenience and necessity authorizing a certain
common motor carrier to operate a motor vehicle sight-seeing service
in the city of Boston, substantial evidence supported the department's
conclusions that the carrier had failed to produce affirmative evidence
of the need for another tour operator to provide unrestricted sight-seeing service in the city, and that the plaintiff had demonstrated a need
only for a restricted certificate allowing it limited authority to operate
one specific vehicle at a speed not greater than twenty miles an hour.
[393-395]

On appeal from an order of the Department of Public Utilities denying a
petition for a certificate of public convenience and necessity to a common motor carrier to the extent it sought an unrestricted certificate to
operate a motor vehicle sight-seeing service, this court did not consider
the plaintiff's contention that, due to the changing economic climate,
the department's practice of protecting existing carriers is erroneous as
matter of law, where neither the department's decision nor the transcript of a public hearing showed any consideration by the department
of the protection policy. [395-396]

A decision by the Department of Public Utilities, denying a common
motor carrier an unrestricted certificate of public convenience and
necessity to operate a motor vehicle sight-seeing service in the city of
Boston but granting the carrier the limited authority to operate one
specific vehicle at a speed not greater than twenty miles an hour, was
not arbitrary, capricious, or an abuse of discretion where the single
vehicle restriction balanced the needs of the sight-seeing public for a
unique sight-seeing vehicle and the needs of the pedestrian and motoring public in a congested urban area, and where, in view of testimony
regarding the partially open nature of the vehicle and its proposed
route through downtown Boston, the speed limit restriction was within the authority of the department to impose. [396-397]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on July 8, 1980.

The case was reported by *Liacos, J.*

*Wesley S. Chused* for the plaintiff.

*Thomas A. Barnico,* Assistant Attorney General, for the defendant.

LIACOS, J.  The plaintiff, Deacon Transportation, Inc. (Deacon), filed a petition with the Department of Public Utilities (DPU) for a certificate of public convenience and necessity to authorize Deacon to operate a motor vehicle sight-seeing service in the city of Boston.  St. 1931, c. 399, § 5, as amended by St. 1933, c. 93, § 2.[1]  The DPU held a public hearing on the petition on May 20, 1980, which was continued on June 2, 1980.  After the hearing at which Deacon and opposing parties (protestants) presented evidence, the DPU ordered the petition of public convenience and necessity to be denied to the extent it sought an unrestricted certificate, but granted the plaintiff the limited authority to operate one specific vehicle at a speed not greater than twenty miles an hour.[2]  Deacon filed an administrative appeal with the DPU, on which no action was taken, and also brought an appeal to the county court.  G. L. c. 25, § 5.  On June 24, 1982, a single justice of this court reserved and reported the case without decision.

At the public hearing on the petition for a certificate of public convenience and necessity, Robert T. Leonard, president of Deacon, testified that Deacon was then primarily in the business of commercial moving and general trucking under the authority of an irregular route common carrier certificate.  Leonard testified that the initial vehicle Deacon planned to use was a thirty-passenger 1927 San Francisco cable car body, mounted on a 1958 Ford truck chassis, sub-

---

[1] The parties have cited these sections as appearing in Mass. Gen. Laws Ann. c. 159A, Appendix (West 1970).

[2] Deacon subsequently petitioned the DPU seeking to modify the restricted certificate to authorize the operation of a second vehicle, a 1981 motorized trackless trolley car.  This petition was allowed and is not part of the present appeal.

ject to inspection and approval of the Registry of Motor Vehicles and the DPU.[3] Leonard stated that Deacon intended to exercise the full scope of the unrestricted sight-seeing authority sought and planned to operate additional vehicles in the future, including both unique and conventional motor buses.

Fourteen witnesses testified in support of Deacon's petition. All stated that they would choose the sight-seeing service proposed by Deacon over conventional motor bus tours because of the colorful, attractive, and unique nature of the San Francisco cable car.

Of the four protestants, all tour bus companies, only two, Freedom Trail Shuttle Tour, Inc., and Gray Line of Boston, Inc. (Freedom Trail/Gray Line) (commonly controlled), submitted testimony in opposition.[4] There was testimony by Maryanne Foley, an officer of both companies, concerning existing sight-seeing services, timetables, scheduling, fares, ticket sales, equipment, and management practices. Foley acknowledged that fear of a new competitive force was the basis of the opposition by Freedom Trail/Gray Line and argued that they should be given the first opportunity to handle any existing, additional, or new sight-seeing business.

---

[3] The Police Commissioner of the city of Boston had issued an appropriate license for the use of the vehicle, as required by St. 1931, c. 399, § 3. The plaintiff had petitioned, but had not heard from, the traffic and parking department of the city of Boston for two stand sites to pick up and discharge passengers, one being adjacent to the horse and carriage tour site area on Commercial Street in front of Quincy Market, and the other at Surface Road between the waterfront parking area and the front of Quincy Market.

[4] Steven C. Caplan, chairman of the board and a major stockholder of both Gray Line, Inc., and Freedom Trail Shuttle Tours, Inc., represented these companies at the hearing. He argued that none of the fourteen witnesses presented by Deacon constituted a recognizable group of potential patrons.

Hub Bus Lines, Inc., and Copley Motor Tours, Inc., were the other two protestants. They did not submit any evidence at the hearing but simply went on record as being opposed to Deacon's petition.

In its decision (D.P.U. 183), the DPU denied the petition for an unrestricted certificate of public convenience and necessity because it found that Deacon "failed to show that there is a need for another fully certificated sight-seeing carrier to provide unrestricted sight-seeing service in and from the City of Boston." However, because Deacon provided sufficient evidence "demonstrating that a good number of people would patronize the unique and interesting service it proposes to offer and provide by use of a 30 passenger San Francisco Cable Car body mounted on a 1958 Ford Truck Chassis vehicle," the DPU granted a restricted certificate limited to the operation of the San Francisco cable car with a speed restriction of twenty miles an hour. The findings by the DPU further stated that Deacon was "fit, willing and able to properly provide the restricted sight-seeing service."

Deacon claims that, pursuant to the State Administrative Procedure Act, G. L. c. 30A, § 14, the decision of the DPU, both as to the restriction to a specific vehicle and the restriction on speed, was (1) unsupported by substantial evidence, (2) based on error of law, or (3) arbitrary, capricious, or an abuse of discretion. We discuss each claim briefly and affirm.

1. *Unsupported by substantial evidence.* The Department of Public Utilities is entrusted with the responsibility of applying statutory standards in matters relating to tour bus licensing. St. 1933, c. 93, § 2.[5] Cf. G. L. c. 159A, § 7.

---

[5] Statute 1933, c. 93, § 2, applies to sight-seeing vehicles operated in or from the city of Boston. Comparable provisions of general application are found in G. L. c. 159A, § 7. Statute 1933, c. 93, § 2, provides: "No person or corporation shall offer or furnish service by sight-seeing automobiles in or from the city of Boston unless said person or corporation has obtained from the department of public utilities a certificate declaring that public convenience and necessity require such operation. Said department may, after public hearing, issue or refuse to issue such a certificate and may attach to the exercise of the privilege conferred by said certificate such terms and conditions as to operation and fares as the said department may deem that public convenience and necessity require. Said department may, after notice and hearing, suspend or revoke any such certificate for cause or alter or amend any terms or conditions attached to the exercise of the privilege conferred thereby. Said department

Thus, it is empowered to grant a petition for a certificate of public convenience and necessity if it finds that (1) the petitioner has the fitness and ability to perform the service, and (2) the petitioned service is required by public convenience and necessity. *Goodwin* v. *Department of Pub. Utils.*, 351 Mass. 25, 27 (1966). See *Western Mass. Bus Lines* v. *Department of Pub. Utils.*, 363 Mass. 61, 62 (1973).

The burden was on Deacon to produce sufficient evidence that the DPU could find these requirements satisfied. See *Almeida Bus Lines* v. *Department of Pub. Utils.*, 348 Mass. 331, 342 (1965). Deacon claims that it satisfied its burden because the protestants failed to produce any records substantiating Freedom Trail's allegation of the present carriers' ability to meet the current demand for sight-seeing or any evidence that the public would be harmed by granting the unrestricted certificate.[6]

This argument misperceives the nature of Deacon's burden. The burden on Deacon cannot be satisfied by its claim of protestants' failure to produce countervailing evidence. Deacon had a burden to produce affirmative evidence on the point. The evidence presented by Deacon at the hearing did not demonstrate "that public convenience and necessity" (St. 1933, c. 93, § 2) required the issuance of an unrestricted certificate. The evidence submitted by Deacon exclusively related to the public convenience and necessity for one particular vehicle. Each of the witnesses called by Deacon testified as to the need for, and interest in, the San

---

may make suitable and reasonable rules, orders and regulations governing the operation and fares of sight-seeing automobiles carrying persons in or from the city of Boston, and may revise, alter, amend and annul the same; provided, that such rules, orders and regulations shall not be inconsistent with those lawfully established by the board of street commissioners of the city of Boston, by the Boston traffic commission, by the board of park commissioners of said city, or by said police commissioner."

[6] Freedom Trail/Gray Line did produce for admission as evidence copies of a 1979 and a 1980 brochure of their shuttle tour, a copy of Gray Line's 1980 brochure, a copy of the schedule of Freedom Trail, two photographs of its shuttle buses, and documentation of ticket sales during tour seasons in 1976, 1979, and 1980.

Francisco cable car. Any evidentiary support they provided Deacon was limited to the narrow question of need for the particular and unusual service offered by the San Francisco cable car. Deacon did not produce any market research identifying an unsatisfied demand for conventional sight-seeing services, or that public convenience and necessity would be served by the granting of an unrestricted certificate. Although Leonard did testify as to projected revenues of the proposed services, he did not submit in evidence any of the studies, statements, or projection figures that he claimed were in his office, to explain or support his testimony.[7]

Under G. L. c. 30A, § 14 (7) (*e*), a decision of an administrative agency may be set aside on judicial review if the court determines that the decision is unsupported by substantial evidence. General Laws c. 30A, § 1 (6), inserted by St. 1954, c. 681, § 1, defines substantial evidence as "such evidence as a reasonable mind might accept as adequate to support a conclusion." See *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 466 (1981); *Almeida Bus Lines* v. *Department of Pub. Utils., supra* at 341. A reasonable mind would perceive the evidence before the DPU as supporting the DPU's conclusion that Deacon had not met its burden of proof and that there was need only for a restricted certificate.

2. *Error of law.* It is true that "it has been the long established policy of this Department to protect an existing carrier in a franchised area from encroachment by other carriers" to prevent the probable result of increased fares and inferior service to the public. *Almeida Bus Lines, Inc.* v. *Department of Pub. Utils., supra* at 335 n.1. But it is also well settled that after due consideration of the public interest the DPU is free to depart from this established

---

[7] Deacon did submit its balance sheet as of December 31, 1979, and its statement of income and retained earnings for the year ending December 31, 1979. These figures, however, relate to Deacon's commercial moving and general trucking business. Such evidence would go only to Deacon's fitness and ability to perform the service, a matter not in issue on this appeal.

policy. See *Western Mass. Bus Lines* v. *Department of Pub. Utils., supra* at 63-64; *Holyoke St. Ry.* v. *Department of Pub. Utils.,* 347 Mass. 440, 450 (1964). The United States Supreme Court has dispelled any notions that the administrative agency's primary obligation is the protection of existing certificate holders. *Bowman Transp., Inc.* v. *Arkansas-Best Freight Sys.,* 419 U.S. 281, 298-299 (1974). See *United States* v. *Dixie Highway Express, Inc.,* 389 U.S. 409, 411 (1967); *Schaffer Transp. Co.* v. *United States,* 355 U.S. 83, 91 (1957). It has not, however, found the policy itself to be an error of law. See *Bowman Transp., Inc.* v. *Arkansas-Best Freight Sys., Inc., supra.* Nevertheless, Deacon contends that, because of the changing economic climate, the Massachusetts practice of protecting existing carriers is erroneous as matter of law. Deacon argues that the mere restriction of its certificate stifles any possible competition.[8]

The argument fails on the record. A careful reading of both the DPU's decision and the transcript of the hearing conducted by the DPU does not show any consideration by the DPU of the protection policy. The DPU based its decision solely on the failure of Deacon to satisfy its burden to show need for another fully certificated sight-seeing carrier. Consequently, Deacon's arguments that we should reconsider the underlying policies of the DPU in such matters is not before us.

3. *Arbitrary, capricious, or abuse of discretion.* Deacon contends that the single vehicle restriction cannot be construed as a proper exercise of the DPU's discretion to impose "such terms and conditions" as the public convenience and necessity may require under St. 1933, c. 93, § 2. It contends further that there is no evidence in the record to support the speed limitation.

---

[8] See Leland, The Emergence of Competition as a Factor in Motor Common Carrier Licensing, 46 I.C.C. Prac. J. 56 (1978); Steinfeld, Regulation Versus Free Competition — The Current Battle Over Deregulation of Entry into the Motor Carrier Industry, 45 I.C.C. Prac. J. 590 (1978).

These arguments are contrary both to the express language of the statute and the prior decisions of this court. We have stated that "[t]he commissioners could consider all the conditions of public travel within the limits of the territory described in the certificate, and could consider and attach such terms and conditions as in their discretion public convenience and necessity required." *Roberto* v. *Department of Pub. Utils.*, 262 Mass. 583, 587 (1928).

While Deacon has shown public interest in a San Francisco cable car sight-seeing tour, it has not shown a general interest or need in additional, conventional sight-seeing services. The single vehicle restriction indicates a determination by the DPU to balance the needs of the sight-seeing public for a unique sight-seeing vehicle and the needs of the walking public and the motoring public to traverse the city streets in a congested urban area. The decision of the DPU is not unreasonable or arbitrary in this regard.

As to Deacon's contention that the record does not support the speed limitation on the vehicle, the president of Deacon testified that the vehicle was partially open and would be equipped with safety straps to prevent passengers from falling out. In view of testimony regarding the nature of the vehicle and the proposed route through downtown Boston, a speed limit restriction of twenty miles an hour is well within the authority of the DPU. There is no abuse of discretion in the imposition of the speed limitation.

The plaintiff has not satisfied its burden of showing that the decision was invalid. See *Western Mass. Bus Lines* v. *Department of Pub. Utils., supra* at 64; *Boston Edison Co.* v. *Selectmen of Concord*, 355 Mass. 79, 91 (1968).

The case is remanded to the county court for entry of a judgment affirming the decision of the DPU.

*So ordered.*