Connolly, J.
The plaintiff brought the present action pursuant to G.L.c. 30A, §14 (State Administrative Procedure Act) seeking judicial review of a final administrative decision of the Department of Social Services that placed the plaintiffs name on the Department’s Central Registry (Central Registry). The plaintiffs complaint asserts that the Department’s final decision was (1) in violation of State and Federal Constitutional provisions; (2) in excess of the statutory authority and jurisdiction of the Department; (3) based upon errors of law; (4) made upon unlawful procedure; (5) unsupported by substantial evidence; (6) unwarranted by the facts on the record; and (7) arbitrary and capricious, an abuse of discretion, and not in accordance with law. After a review of the Administrative Record and the memoranda of the parties, the Department of Social Services’ decision is vacated. The case is to be remanded back to the Department for a new Fair Hearing.
BACKGROUND
The following background information was obtained through a review of the Fair Hearing transcript and Administrative Record.
On June 7, 1993, a 51A Report (Report) was received by the Massachusetts Department of Social Services (Department) on behalf of two minor boys and their mother alleging the sexual abuse by the Appellant, Jeffrey Stone (Stone).[1] At the time of the incident, Stone was sixteen years of age and the two boys were ages four and six respectively. The report indicated that on or about March 13, 1993, the children came into their house after sledding with Stone and complained that Stone had said and done bad things to them. Both boys indicated that Stone had put his hand down the front of their pants and touched their “private part.”[2] The mother, however, did not report the incident, but rather confronted Stone with the allegation.[3] Stone denied any involvement.
Ms. Kathleen M. Souza (Souza), on behalf the Department, screened the initial report and spoke with both the reporter and the mother. The mother stated that she gave the boys permission to go sledding with Stone but there was no babysitting involved. The mother never spoke with Stone at this time. Souza, however, indicated that the mother gave her the impression that she had entrusted Stone with a certain amount of responsibility for the children.
The report was subsequently referred to Mr. Thomas Birch (Birch) who was assigned to investigate the report on behalf of the Department pursuant to G.L.c. 119, §51B. Birch made contact with the Norfolk County District Attorney’s Office (DA’s Office) for a possible joint investigation. The DA’s Office, after reviewing the report, chose not to investigate.
Birch subsequently contacted the mother to arrange interviews with the children. The mother, although reluctant, agreed to the interviews which were to take place on June 9, 1993. The interviews took place at the home of Donald Griffin (Griffin).[4] After interviewing the mother, Birch interviewed the children together. Present during this interview was the boys’ mother, Griffin, and Griffin’s wife. Birch admitted that the Griffins provided some assistance during the interview. The boys both confirmed their earlier account of what happened.
Sometime later, a letter was sent to Mr. and Mrs. Stone advising them of the report against their son and scheduled an interview for June 15, 1993. On June 14, 1993, Mr. John Mahaney (Mahaney) contacted Birch indicating that he was representing Stone and all communications should go through him. Mahaney stated that the earliest time an interview could be conducted was the following week. Birch explained that the ten-day investigative time frame expired on June 17, 1993, and if no interview was conducted within that time, then the decision would have to be made without Stone’s input.[5]
Birch, sometime later, contacted the boys’ father but no new information was obtained. Birch was also told by the mother that there was an alibi witness for Stone but Birch did not take any measures to contact her. Further the boys’ mother told Birch that she took the boys to a doctor. Birch, however, did not try to contact the doctor.
At the conclusion of the investigation, Birch found reasonable cause to believe that an incident had taken place and subsequently supported the report and listed Stone’s name on the Central Registry.[6]
Stone was notified of Birch’s decision and requested a Fair Hearing review. The Fair Hearing took place on November 23, 1993. Several witnesses testified and exhibits were introduced into evidence. Stone, who was represented at the hearing by Attorney Mahaney, was denied the opportunity to examine the mother of the two boys.[7]
On January 13, 1994, the Fair Hearing Officer issued a decision upholding the decision to support the 51A Report and to list Stone’s name on the Central Registry. Specifically, the Hearing Officer concluded that the plaintiff was a “caretaker” within the meaning of the Department[8] and “the Department had reasonable cause to believe that the reported children were sexually abused by a caretaker.”[9]
DISCUSSION
I.
A reviewing court may set aside an administrative decision if it finds that the substantial rights of a party may have been prejudiced because the decision is defective under G.L.c. 30A, §14(7). The party appealing *527 an administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab. Policies & Bonds, 11 Mass.App.Ct. 470, 474 (1989); Faith Assembly of God of South Dennis and Hyannis, Inc. v. State Bldg. Code Comm’n., 11 Mass.App.Ct. 333, 334 (1981), citing Almeida Bus Lines, Inc. v. Department of Public Utils., 348 Mass. 331, 342 (1965). The court’s review is confined to the record, except in cases of irregularities. G.L.c. 30A, §14(5). In reviewing the agency’s decision, the court is required to give due weight to the agency’s experience, technical competence, specialized knowledge, and discretionary authority. G.L.c. 30A, §14; Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992); Seagram Distillers Co. v. Alcoholic Beverages Control Comm’n., 401 Mass. 713, 721 (1988); Quincy City Hospital v. Labor Relations Comm’n., 400 Mass. 745, 748-49 (1987).
The court may affirm the decision of the agency, remand the matter for further proceedings, or set aside or modify the decision, if it determines that the substantial rights of a party may have been prejudiced because of violations of constitutional provisions, in excess of the agency’s statutory authority, an error of law, made upon unlawful procedure, or that the decision is unsupported by substantial evidence, is unwarranted by facts found in the record, or is arbitrary, capricious, or an abuse of discretion. G.L.c. 30A, §14(7). “Substantial evidence” is what a reasonable mind might accept as adequate to support a conclusion, Deacon Transportation, Inc. v. Department of Public Utils., 388 Mass. 390, 395 (1983), and a court will not substitute its judgment for that of the agency when there is “substantial evidence.” See Hickey v. Commissioner of Public Welfare, 38 Mass.App.Ct. 259, 262 (1995).
If there is substantial evidence in support of an agency’s decision, the reviewing court must affirm the decision, even it would have reached a different result based on the same evidence. D’Amour v. Board of Registration in Dentistry, 409 Mass. 572, 581 (1991); Seagram Distillers Co., 401 Mass. at 721. A court may not dispute an administrative agency’s choice between two conflicting views, even though the court would justifiably have made a different choice had the matter come before it de novo. Zoning Board of Appeals of Wellesley v. Housing Appeals Committee, 385 Mass. 651, 657 (1982).
II.
General Laws, c. 30A, §14(7) expressly provides that the reviewing court may take appropriate judicial action “if it determines that the substantial rights of any party may have been prejudiced because the agency decision” violated or offended any of the standards of review set forth in G.L.c. 30A, §14(7). The appellant’s Complaint for review of the Department’s decision encompasses all of the grounds listed in G.L.c. 30A, §14. An analysis on each ground, however, is unnecessary because a review of the first ground is determinative. Accordingly, the court will not rule on the subsequent grounds.
A. Violation of Federal and State Constitutional Provisions
Agency action that affects an individual’s constitutionally protected liberty or property interests is subject to the due process protections and requirements of the Fifth and Fourteenth Amendments to the United States Constitution and similar provisions of the state constitution. Perry v. Sindermann, 408 U.S. 593 (1972).
In conducting adjudicatory procedures, agencies must afford all parties an opportunity for a full and fair hearing. G.L.c. 30A, §11. Procedural due process requires that, in any proceeding to be accorded finality, notice must be given to an interested party, sufficient to give a party the opportunity to present his or her case to the agency. Langlitz v. Board of Registration of Chiropractors, 396 Mass. 374, 376 (1985). “[W]hen administrative action is taken in an adversary proceeding without affording adequate notice and an opportunity to defend to interested parties, basic constitutional rights are invaded.” United States v. Wood, 61 F.Supp 175, 179 (D.Mass. 1945) (citations omitted).
Stone contends that his right to present his case in a fair and effective manner was denied because he was not able to examine the boy’s mother at the Fair Hearing. The Hearing Officer granted the request of Len Baxendale, the area program manager, that the subpoena of the mother be vacated. See Transcript of the Administrative Hearing at 10-11. The Hearing Officer cited both confidentiality and harassment reasons for his decision. See Transcript of the Administrative Hearing at 10-11. Stone asserts that the boys’ mother was an important witness for him due to the fact that there was some dispute as to whether the plaintiff was a caretaker or not. If the plaintiff was not a caretaker, then the 51A Report would be unsupported, and the Department would not have a basis to place Stone’s name on the Central Registry. Thus, any action taken against Stone would have to be initiated by the district attorney’s office. See 110 C.M.R. 4.33(4). In this case, the District Attorney’s office was notified previously about the allegations but chose not to pursue any course of action.
On November 19, 1993, Attorney Mahaney recorded a telephone conversation between himself and the boy’s mother to which she agreed. During the conversation, Mr. Mahaney asked if the plaintiff ever babysat for the boys to which the mother replied that he had not.[10] Moreover, she communicated to Mr. Mahaney that she told the Social Worker that the plaintiff was not a caretaker or a babysitter and the social worker responded that they probably could not do anything about it but rather it would have to be handled by the district attorney’s office.[11] Conversely, *528 the Administrative Hearing Decision on January 13, 1994 by Frances I. Wheat (Wheat) states in his “Findings of Fact” that Ms. Souza, the Department’s screener, spoke with the mother who stated that she had entrusted the plaintiff with a certain amount of responsibility for her children on the day in question. (See Administrative Record of Proceedings at 38.) Mr. Wheat reasoned that the plaintiff was a caretaker because he was entrusted with a certain amount of responsibility that day.
The fact that the mother was excused from testifying at the Fair Hearing raises serious constitutional problems. A key issue was whether or not the plaintiff was a “caretaker” as defined in 110 C.M.R. 2.00. There was conflicting evidence at the hearing and resolution of this issue requires the mother’s testimony in order to determine if the Department’s decision to support the 51A report should be upheld.
The decision to vacate the subpoena of the boy’s mother was in error because it denied Stone the opportunity to present his case effectively, thus violating his rights under both the federal and state constitutions. Moreover, the decision to vacate the subpoena for confidentiality and harassment reasons is unfounded. First, no confidentiality issues would be breached by the mother’s testimony because the mother’s identity was already known to the participants at the hearing. Second, although it is understandable that the mother would have some concern for herself and her children, there was no evidence that Stone has harassed or threatened her or her children in any way. See Administrative Record at 24-25.
ORDER
For the foregoing reasons, it is hereby ORDERED that the decision of the Fair Hearing Office dated January 13, 1994 be VACATED. It is further ORDERED that the case be REMANDED back to the Department of Social Services for a new Fair Hearing that affords the appellant a full opportunity to present his case.

The names of the two boys will be kept confidential.

he older boy returned to his home first. His mother asked him what was wrong to which he replied “nothing. ” The younger boy then entered the house and said that Stone had said bad things to him and did something bad. The mother asked what he did and the boy said Stone stuck his hand down the front of his pants and touched his “private part.” The mother subsequently asked the older boy what had happened and the boy repeated the story. The boy stated he was afraid to tell his mother initially.

The mother indicated that she did not report the incident because she was fearful of retaliation from Stone.

Donald Griffin is the landlord of the boys’ mother and the uncle of Stone. There was evidence that Mr. Griffin and the Stone family had a bitter relationship with one another. In fact, the Stones had a restraining order issued against Mr. Griffin prohibiting him from going onto the Stones’ property unless he was visiting his mother who lived with the Stones.

Birch sought an extension to the investigative time frame but it was denied. As a result, Stone’s statement was never obtained.

The Central Registry is an internal Department listing which is used primarily to screen applicants for employment with the Department and to screen potential foster and adoptive parents. Access to the registry is limited to certain individuals. 110 C.M.R. 4.38.

The plaintiff subpoenaed the mother of the two boys but the subpoena was vacated by the Hearing Officer for confidentiality reasons.

“Caretaker means a child’s:
(a) parent
(b) stepparent
(c) guardian
(d) any household member entrusted with the responsibility for a child’s health or welfare
(e) any other person entrusted with the responsibility for a child’s health or welfare whether in the child’s home, a relative’s home, a school setting, a day care setting (including babysitting), a foster home, a group care facility, or any other comparable setting. As such, “caretaker” includes (but is not limited to) school teachers, babysitters, school bus drivers, camp counselors, etc. The “caretaker” definition is meant to be construed broadly and inclusively to encompass any person who is, at the time in question, entrusted with a degree of responsibility for the child. This specifically includes a caretaker who is him/herself a child (i.e. a babysitter under age 18)."
110 C.M.R. 2.00.

Abuse means the nonaccidental commission of any act by a caretaker upon a child under age 18 which causes, or creates a substantial risk of physical or emotional injury, or constitutes a sexual offense under the laws of the Commonwealth or any sexual contact between a caretaker and a child under the care of that individual. This definition is not dependent upon location (i.e., abuse can occur while the child is in an out-of-home or in-home setting).
110 C.M.R. 2.00 (emphasis in original).

Mahaney: I was just wondering, you told me yesterday that [the plaintiff] never babysat for you.
Mother: Right, he never did.
Mahaney: He never took care of the kids or anything . . .
Mother: His older bother, . . . did, Yes.
Mahaney: Did [the plaintiff] ever — you never paid him for babysitting or anything.
Mother: Never! Never.
Administrative Record of Proceedings at 22.

Mahaney: I hear what you’re saying. Because the Social Worker is saying that he was a “caretaker,” or . . .
Mother: I told the Social Worker — the Social Worker came right out and asked me — "was he a ‘caretaker,’ or was he a “babysitter?” I said, “No!” And they said to me: “We probably can’t do anything about this!” And I said. “I don’t want you to do anything about this!”
Administrative Record of Proceedings at 29. See also Administrative Record of Proceedings at 30-32.